JOHN D. COLE, THIRD, *vs.* WESTINGHOUSE BROADCASTING COMPANY, INC. & another.[1]

Suffolk.  February 1, 1982. — May 20, 1982.

Present: HENNESSEY, C.J., LIACOS, NOLAN, & O'CONNOR, JJ.

*Libel and Slander.  Practice, Civil, Appeal.*

Where the plaintiff in a libel action was not prejudiced by any prematurity in a notice of appeal filed by two defendants on January 21, 1981, this court refused to dismiss the appeal, even though the case technically may not have been ripe for appeal until March 6, 1981, when judgment was entered dismissing the case against a third defendant. [306-307]

Although motions for directed verdicts filed by defendants in a libel action did not explicitly rely on the ground that the phrases in question were nonactionable opinions, the issue was properly before this court inasmuch as defendants had raised it before the trial judge before trial in argument on their motions to dismiss and after trial in motions for judgment notwithstanding the verdict. [307-308]

Certain allegedly defamatory statements made to newspapermen by a spokeswoman for a television station in explaining the dismissal of an employee of the station, when viewed in their context, constituted nonactionable statements of opinion. [308-313]

CIVIL ACTION commenced in the Superior Court on April 2, 1975.

The case was tried before *Good*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Charles R. Parrott* (*Mary Lee Jacobs* with him) for the defendants.

*Alexander H. Pratt, Jr., & Harvey Weiner* for the plaintiff.

[1] Seymour Yanoff.

NOLAN, J.   The plaintiff, John D. Cole, III (Cole), brought this action in the Superior Court for alleged defamation by Westinghouse Broadcasting Company, Inc. (Westinghouse), WBZ-TV, Seymour Yanoff, individually and as general manager of WBZ-TV, Amy Konowitz, individually and as official spokesperson for WBZ-TV and Alan Frank, individually and as program manager of WBZ-TV. At the close of the plaintiff's case, the trial judge allowed motions by Frank and Konowitz for directed verdicts, but denied similar motions by Westinghouse and Yanoff.[2] Westinghouse and Yanoff renewed their motions for directed verdicts at the conclusion of the trial and those motions were denied.   In response to a special question, the jury found Cole to be a public figure.   They returned a verdict in Cole's favor and assessed damages of $100,000.   Westinghouse and Yanoff appealed from the judgment on the jury verdict and the denial of their motions for judgment notwithstanding the verdict or, in the alternative, for a new trial.   Cole cross appealed from the judgment entered in favor of Konowitz.   We allowed the defendants' application for direct appellate review.   We reverse the judgment for Cole.

The evidence may be summarized as follows.   Cole began his employment with WBZ-TV in 1969 as a staff reporter. From July, 1971, to July, 1974, he was employed under a written contract as a staff news announcer.   Following the expiration of Cole's employment contract in July, 1974, he continued employment with WBZ-TV as a general assignment reporter covered by a collective bargaining agreement.   Yanoff became the general manager of WBZ-TV in August, 1973.   One William Aber was hired as WBZ-TV news director in October, 1974.

During the winter of 1974-1975, WBZ-TV broadcast a series of reports which Cole had prepared concerning the political fundraising of the mayor of Boston, Kevin White, and his use of the Parkman House.   On March 13, 1975,

---

[2] As to the defendant WBZ-TV see discussion, *infra*.

Cole covered a meeting of the Boston Finance Commission (commission) at which the commission voted to investigate Mayor White's fundraising activities. Cole's report was broadcast on the evening news. Aber observed Cole's report and also viewed a broadcast by another local television station which aired a film of Mayor White commenting on the vote of the commission. Cole's report did not include the Mayor's comment although Cole had been told by a WBZ-TV assistant news director that the film was available for use. Yanoff testified at trial that Aber met with him on March 13, 1975, and informed him of the events of the day. The following day Yanoff reviewed written statements prepared by Aber and three members of the news staff concerning the broadcast. Aber recommended Cole's termination on the grounds of "misconduct and incompetence" and detailed the incident concerning the omission of Mayor White's comments which led to this recommendation. Cole was suspended and terminated about one week later.

Yanoff prepared an official statement to be released when the television station received inquiries relating to Cole's termination. The release stated that Cole had been terminated "for reasons of misconduct and insubordination." Yanoff testified at trial that he gave the statement to one Alex Dusek and directed Dusek to give it to Amy Konowitz to use in responding to inquiries from the news media.

On March 21, 1975, an article appeared in the Boston Globe newspaper, by Percy Shain, stating that Cole had been fired for "misconduct and insubordination." The article mentioned the incident involving the commission and went on to say that a WBZ-TV spokesman said "unofficially, that Cole's firing was not a direct result of the newscast, but was a case of 'sloppy and irresponsible' reporting." Shain testified at trial that, prior to writing the article, he had called Konowitz and inquired about Cole's suspension. Konowitz read him the official release. Shain then asked her for more information and she said "unofficially" that it was a case of "sloppy and irresponsible reporting." This

is one of the statements which Cole claims to be defamatory.

About the same time, David O'Brian, a columnist for the Boston Phoenix newspaper, telephoned WBZ-TV, and spoke with Konowitz. He testified that he asked her why Cole had been terminated and she read to him WBZ-TV's official statement. He then stated to her that he had heard that Cole had been fired because of the way he had handled the report on the Boston Finance Commission's press conference. Konowitz replied: "That was just the last straw. Jack was fired for a history of bad reporting techniques." O'Brian wrote a column published in the Boston Phoenix newspaper quoting this statement. Cole alleged that this statement was defamatory.

1. *Prematurity of appeal.* Before reaching the merits of this appeal, we shall discuss two preliminary issues raised by the plaintiff. The plaintiff argues that this appeal should be dismissed because of the defendants' failure properly to file notices of appeal. The plaintiff filed a complaint against Westinghouse, WBZ-TV, Yanoff, Konowitz, and Frank. The judge allowed motions for directed verdicts as to Konowitz and Frank. On October 31, 1980, the jury returned a verdict for the plaintiff, on which judgment was entered on November 3, 1980. Westinghouse and Yanoff timely moved for judgments notwithstanding the verdict or, in the alternative, for a new trial. The judge denied the motions on December 23, 1980. On January 21, 1981, Yanoff and Westinghouse filed notices of appeal from the judgment on the jury verdict and the denial of their motions. The plaintiff filed a cross appeal on January 30, 1981, from the judgment entered in favor of Konowitz. On March 3, 1981, the parties filed a stipulation of dismissal as to WBZ-TV. The plaintiff argues that since judgment was not entered for WBZ-TV until March 6, 1981, the case was not ripe for appeal until that time and the defendants' appeals filed on January 21, 1981, were premature and ineffective.

WBZ-TV is owned and operated by Westinghouse. Although WBZ-TV was designated a separate entity in the

complaint, it is clear that the parties treated WBZ-TV and Westinghouse as one and the same throughout the litigation. Cole did not ask for a judgment against WBZ-TV and filed his notice of cross appeal from the same judgment from which the defendants appealed in January, 1981. The plaintiff has not been prejudiced by the prematurity, if any, of the notice of appeal and we will not avoid a decision on the merits on the basis of such a technicality. *Hutchinson* v. *Hutchinson*, 6 Mass. App. Ct. 705, 707 (1978), and cases cited.

2. *Specificity of motions for directed verdicts.* The plaintiff next contends that the issue whether the statements alleged to be defamatory constitute fact or opinion has not been properly preserved for review. The plaintiff argues that the issue is not before us because the defendants' motions for directed verdicts did not explicitly rely on the ground that the phrases were nonactionable opinions, but instead asserted that there was no evidence to warrant a jury finding of actual malice on the part of the defendants. We find that the issue is properly before us for several reasons. The defendants, in their oral argument on their motion to dismiss at the outset of the trial, argued at length that the action should be dismissed because the statements were nonactionable opinions. The judge declined to rule on the motion, stating essentially that he wanted to hear evidence concerning the circumstances in which the statements were made before determining their nature. At the directed verdict stage, while the defendants did not expressly raise this issue, they based their motions for a directed verdict on the lack of evidence which would warrant a finding of actual malice on the part of the defendants. Finally, in their motions for judgment notwithstanding the verdict the defendants expressly raised the opinion versus fact issue. While the defendants perhaps should have explicitly included the opinion versus fact distinction in their motions for directed verdicts, their failure to do so does not bar our review of that issue now. The judge had adequate notice of this issue, which was fully presented at the pretrial stage

and again at the posttrial stage. In addition, the issue whether sufficient evidence of a defendant's required state of mind exists is closely connected to the issue whether the statement can be characterized as an opinion or a fact. Finally, in a case of this type where constitutional issues are presented, our role as a reviewing court is necessarily broad. *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 285 (1964). We now discuss the merits.

Because the plaintiff is a public figure, this libel action is governed by the constitutional principles first set forth in *New York Times Co.* v. *Sullivan, supra*. Our role in reviewing a libel case of this kind requires careful appellate review of the facts. We must "examine for ourselves the statements in issue and the circumstances under which they were made to see . . . whether they are of a character which the principles of the First Amendment . . . protect. . . . We must 'make an independent examination of the whole record,' . . . so as to assure ourselves that the judgment does not constitute a forbidden intrusion on the field of free expression" (citations omitted). *Id.* at 285. After undertaking such a review in this case we conclude that the jury verdict for the plaintiff must be set aside. The alleged defamatory statements are nonactionable opinions.

3. *The statements as opinions.* Recently, in *National Ass'n of Gov't Employees, Inc.* v. *Central Broadcasting Corp.*, 379 Mass. 220 (1979), cert. denied, 446 U.S. 935 (1980), and again in *Myers* v. *Boston Magazine Co.*, 380 Mass. 336 (1980), we discussed the law governing defamatory opinions. We started with the premise that "under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact." *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 339-340 (1974). The determination whether the allegedly defamatory statements constitute fact or opinion is critical. "In this context courts apply the Constitution by carefully distinguishing between

statements of opinion and fact, treating the one as constitu-
tionally protected and imposing on the other civil liability
for its abuse." *Gregory* v. *McDonnell Douglas Corp.*, 17
Cal. 3d 596, 601 (1976). The determination whether a
statement is one of fact or opinion is generally considered a
question of law. In *Greenbelt Coop. Publishing Ass'n* v.
*Bresler*, 398 U.S. 6, 13-14 (1970), the Supreme Court set
aside a jury verdict and held that the use of the word
"blackmail" to describe the conduct of the plaintiff in that
case could not have been understood as a statement of fact
and therefore was not libelous as a matter of law. Simi-
larly, in *Old Dominion Branch No. 496, Nat'l Ass'n of Let-
ter Carriers* v. *Austin*, 418 U.S. 264, 283 (1974), the Court
held that the publication of Jack London's definition of
"scab," containing words suggesting that the plaintiffs had
"rotten principles," and were "lacking character," did not
constitute libel. "Such words were obviously used . . . in a
loose, figurative sense to demonstrate the union's strong dis-
agreement with the views of those workers who oppose un-
ionization. Expression of such an opinion, even in the most
pejorative terms, is protected under federal labor law." *Id.*
at 284. In *Myers* v. *Boston Magazine, Inc., supra* at 341,
we applied these principles and held as a matter of law that
the statement at issue there was an opinion and could not be
the basis of a libel action.

In deciding whether statements can be understood rea-
sonably as fact or opinion "the test to be applied . . . re-
quires that the court examine the statement in its totality in
the context in which it was uttered or published. The court
must consider all the words used, not merely a particular
phrase or sentence. In addition, the court must give weight
to cautionary terms used by the person publishing the state-
ment. Finally, the court must consider all of the circum-
stances surrounding the statement, including the medium
by which the statement is disseminated and the audience to
which it is published." *Information Control Corp.* v.
*Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir.
1980). See *New York Times Co.* v. *Sullivan*, 376 U.S. 254,

285 (1964); *Buckley* v. *Littell*, 539 F.2d 882, 888 (2d Cir. 1976), cert. denied, 429 U.S. 1062 (1977). We applied this test in *Myers*, *supra*, and now apply it here.

The two columnists, Percy Shain and David O'Brian, telephoned Konowitz, in her capacity as a spokesperson for WBZ-TV, seeking information concerning Cole's dismissal. Konowitz read them both the official release which stated in part that Cole was dismissed because of "misconduct and insubordination." Cole did not contend in his complaint that this statement was defamatory. It was only upon further questioning that Konowitz stated "unofficially" that Cole's dismissal was due to "sloppy and irresponsible reporting" and a "history of bad reporting techniques." It is important to our analysis that Cole was a public figure at the time of this incident and that the circumstances surrounding his dismissal were a matter of public interest, as evidenced by the newspaper articles published concerning his dismissal. The official statement prepared by WBZ-TV stated that Cole was contesting his dismissal. Cole testified that he spoke with a member of the press at that time and expressed his view that political pressures played a role in his dismissal. While the situation was probably not the type of heated "public debate" in which "voices could be expected to be raised in sloganeering invective," *National Ass'n of Gov't Employees, Inc.* v. *Central Broadcasting Corp.*, 379 Mass. 220, 229 (1979), the context of the statements is a significant factor in our determination of how they could reasonably be understood. As the California court wrote in *Gregory* v. *McDonnell Douglas Corp.*, 17 Cal. 3d 596, 601 (1976), "what constitutes a statement of fact in one context may be treated as a statement of opinion in another, in light of the nature and content of the communication taken as a whole. Thus, where potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion."

Here, the fact that the statements were made in response to inquiries concerning the contested dismissal of a public figure is of some significance in how they could be reasonably interpreted. The audience which received the statements, first the reporters and later those reading the newspaper articles, were aware that Cole and WBZ-TV claimed different reasons for Cole's contested dismissal. The newspaper articles included this information. Both reporters acknowledged that Konowitz had made the statements at issue only in response to their further questioning and after qualifying her remarks as "unofficial." The reporters testified that they understood that her statements were not part of the television station's official release. These factors lend support to our view that the statements were matters of opinion rather than fact.

A review of recent cases in which the opinion versus fact distinction was applied strengthens our view that the phrases "sloppy and irresponsible reporting" and "history of bad reporting techniques," when viewed in their context, could not reasonably be viewed as statements of fact. The case of *Rinaldi* v. *Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 376, cert. denied, 434 U.S. 969 (1977), involved assertions published by the defendant which stated that a certain judge was among the ten worst judges in New York, had made a "sufficient pattern of incompetent decisions" and should be removed from judicial office. The court held these statements to be nonactionable expressions of opinion, stating that the "[p]laintiff may not recover from defendants for simply expressing their opinion of his judicial performance, no matter how unreasonable, extreme or erroneous these opinions might be." *Id.* at 380-381. The court distinguished the statement that the plaintiff was "probably corrupt" as this was an accusation of criminal activity that could be proved true or false. *Id.* at 381-382. *Edwards* v. *National Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir.), cert. denied sub nom. *Edwards* v. *New York Times Co.*, 434 U.S. 1002 (1977), was an action sounding in defamation brought by certain scientists based on publication of an

article accusing them of being "paid liars" in regard to their support of the continued use of the insecticide DDT. The court distinguished between the phrase "paid liars" and "liars," stating that the first would be actionable as it implies corruption and can be proved true or false whereas the word "liar" merely expressed an opinion and could not be libelous, however mistaken the opinion might be. In *Buckley* v. *Littell*, 539 F.2d 882, 884-885 & n.1 (1976), the court held that the phrases published in a book concerning extremism which stated that the plaintiff was a "fascist," "fellow traveler" of fascism and printed "'news items' and interpretations picked up from the openly fascist journals" were matters of opinion and protected ideas, while the assertion that the plaintiff had lied about and libeled several people in his work as a journalist was an assertion of fact.

In *Myers, supra*, we held that the statement that Myers, a local television sports announcer, "is enrolled in a course for remedial speaking" could only be interpreted as an expression of opinion, or critical judgment and was, therefore, nonactionable. We reached this decision after examining the context in which the statement was made noting that "[r]emoved from context, the statement passes for a factual proposition whose sense is clear." *Id.* at 344.

Similarly, the statements made by Konowitz can only be viewed as expressions of opinion regarding Cole's reporting abilities. Whether a reporter is sloppy and irresponsible with bad techniques is a matter of opinion. The meaning of these statements is imprecise and open to speculation. They cannot be characterized as assertions of fact. They cannot be proved false. "An assertion that cannot be proved false cannot be held libellous." *Hotchner* v. *Castillo-Puche*, 551 F.2d 910, 913 (2d Cir.), cert. denied sub nom. *Hotchner* v. *Doubleday & Co.*, 434 U.S. 834 (1977).

The plaintiff argues that even if the statements are viewed as opinions they are actionable because they imply the allegation of undisclosed defamatory facts as the basis for the opinion. Section 566 of Restatement (Second) of Torts (1977) states: "Expressions of Opinion. A defamatory

communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." Comment c of § 566, at 173 states: "A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. . . . It is the function of the court to determine whether an expression of opinion is capable of bearing a defamatory meaning because it may reasonably be understood to imply the assertion of undisclosed facts that justify the expressed opinion about the plaintiff or his conduct . . . ." When the statements are viewed within their context, they do not imply the allegation of undisclosed defamatory facts as their basis. It was disclosed by the press release that Cole was terminated for "misconduct and insubordination." This was the stated reason for his dismissal. There was also discussion of Cole's conduct in reporting the Boston Finance Commission hearing. These are the "facts" underlying the opinion. While Konowitz's statements may also imply that she had knowledge of other instances of Cole's alleged shortcomings as a reporter, this possibility does not meet the requirements of § 566. Even assuming that the statements imply other undisclosed facts, in order for an opinion to be actionable, the undisclosed facts must be defamatory.

In the present case, it is not clear that any undisclosed facts are implied, or if any are implied, it is unclear what they are. Finally, it is entirely unclear (even assuming that facts are implied) that they are defamatory facts. We therefore find no merit in the plaintiff's argument that the opinion is actionable on the basis of underlying assumed defamatory facts.

4. *Conclusion.* We need not respond to the arguments concerning the nature of malice and public figures because we hold that the statements under review are opinions and that as opinions they do not subsume defamatory facts and, hence, they do not constitute actionable defamation.

*Judgment reversed.*

*Judgment for the defendants.*