608

Herbert J. LEWIS, Plaintiff,

v.

John E. McTAVISH, et al., Defendants.

Civ. A. No. 87–0805.

United States District Court,
District of Columbia.

Nov. 2, 1987.

Herbert J. Lewis, pro se.

David W. DeBruin, Jenner & Block, Washington, D.C., for defendants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Herbert J. Lewis, a GS–12 examiner in the Investment Management Division of the Securities and Exchange Commission, brought this defamation action against John E. McTavish and McTavish's employer, John Nuveen & Co., Inc. Plaintiff seeks damages allegedly caused by a "confidential" letter from defendants to his supervisor complaining of difficulties in dealing with plaintiff on matters relating to the Nuveen open end mutual fund and asking the supervisor to assign another examiner to the account. As a result, plaintiff was replaced on the Nuveen matters and "subjected to other disciplinary action" of an unspecified nature.

The matter is before the Court on defendants' motion to dismiss for failure to state a claim, Fed.R.Civ.P. 12(b)(6). Because the challenged statements were expressions of opinion entitled to absolute protection under the First Amendment, plaintiff's claims cannot stand as a matter of law. Accordingly, upon consideration of the complaint, the motion to dismiss, the opposition thereto, and defendants' reply, the Court shall grant defendants' motion to dismiss.

## BACKGROUND

On March 24, 1986, defendants sent to plaintiff's supervisor a one-page letter, marked "confidential," purporting to follow up "our recent telephone conversation concerning the difficulties we have had with the examiner assigned to the Nuveen open end mutual funds." The letter, reproduced in full in the complaint, recounted a 1983 securities registration McTavish conducted with the plaintiff, an experience described as "frustrating." To avoid another such experience, McTavish had the company's outside counsel handle a subsequent securities registration. However, the two lawyers assigned to that case "experienced the same problems," according to the letter.

The letter criticized the plaintiff on several accounts. Four of those criticisms are alleged to be libelous:

1) "His primary problem is that he really does not have a substantive understanding of the Investment Company Act."

2) "The related problem in dealing with Mr. Lewis is his inability to communicate an explanation of the comment...."

3) "The related problem in dealing with Mr. Lewis is ... his absolute unwillingness to compromise."

4) "In dealing with Mr. Lewis, we have not been given the opportunity for meaningful two-way communication and it is a totally frustrating experience. I do not think the problem is his unwillingness to discuss the matter. I think the problem is that he does not understand the comment he is passing on. He simply does not have the knowledge and skill to effectively communicate and engage in the give and take that is essential between the examiner and the registrant in the registration process. This being the case, I respectfully request that Nuveen be assigned another examiner on our open-end mutual funds."

Plaintiff, initially proceeding *pro se* but subsequently represented by counsel, filed suit in diversity on March 23, 1987.

## DISCUSSION

Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Defendants make two arguments: first, that the statements are not actionable because they are opinions absolutely protected under the First Amendment's free speech clause; and second, that the letter is not actionable because it is qualifiedly privileged under the First Amendment's right to petition clause. Because the Court concludes that the criticisms of plaintiff were expressions of opinion entitled to absolute protection under the First Amendment, it is not necessary to reach defendants' second argument.

In deciding a Fed.R.Civ.P. 12(b)(6) motion, the Court must construe the complaint favorably to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted).

However, "the distinction between opinion and fact is a matter of law," *Ollman v. Evans*, 750 F.2d 970, 978 (D.C.Cir.1984) (en banc), *cert. denied*, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985), and can therefore properly be addressed at this stage of the proceedings.

Expressions of opinion are absolutely protected under the First Amendment. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339, 94 S.Ct. 2997, 3006, 41 L.Ed.2d 789 (1974). "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Id.* at 339–40, 94 S.Ct. at 3006–07.

*Gertz* thus imposes on courts the duty "as a matter of constitutional adjudication to distinguish facts from opinions in order to provide opinions with the requisite, absolute First Amendment protection." *Ollman*, 750 F.2d at 975 (footnote omitted). Distinguishing between statements of fact

and expressions of opinion is not always an easy task, however. The Court of Appeals for the District of Columbia Circuit has highlighted four factors that should be considered in making the distinction.

■ First, courts must look to the common usage or meaning of the words themselves, "to determine whether the allegedly defamatory statement has a precise meaning and thus is likely to give rise to clear factual implications." *Id.* at 979–80. Statements that are "loosely definable" or "variously interpretable" generally cannot support an action for defamation. *Id.* at 980. A libel action can be maintained only where "the statement has a precise core of meaning for which a consensus of understanding exists." *Id.* at 979.

The court cited two state court opinions to provide examples of statements too imprecise to support defamation actions. The New York Court of Appeals held the term "incompetent" as applied to a judge was too vague, although it held the term "probably corrupt" to be actionable. *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 377, 366 N.E.2d 1299, 1303, 397 N.Y.S. 2d 943, 947, *cert. denied*, 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977). The Massachusetts Supreme Court held the phrases "sloppy and irresponsible reporting" and "history of bad reporting techniques" to be statements of opinion too imprecise to support a defamation action. *Cole v. Westinghouse Broadcasting Co.*, 386 Mass. 303, 311, 435 N.E.2d 1021, 1026 (1982).

The second consideration is whether the statements are verifiable, whether they can be proved or disproved. 750 F.2d at 981. If a statement cannot be verified, it can hardly be seen as "fact." *Janklow v. Newsweek*, 788 F.2d 1300, 1302 (8th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986).

A third factor is the literary context in which the disputed statement was made. 750 F.2d at 982. "Readers will inevitably be influenced by a statement's context, and the distinction between fact and opinion can therefore be made only in context." *Id.* Put another way, was the reader put on notice that he or she was reading an opinion, and not being presented with facts?

Finally, courts should look to the broader social context in which a statement is made. "Some types of writing or speech by custom or convention signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." *Id.* at 983.

■ The task at hand is to apply the foregoing analysis to this case, evaluating the challenged statements for precision, verifiability, literary context, and social context.

The challenged statements, quoted in full above, can be summarized as follows: 1) plaintiff lacks a substantive understanding of the Investment Company Act; 2) plaintiff is unable to communicate his views; and 3) plaintiff is unwilling to compromise and engage in "give and take."

First, the Court finds these assertions too imprecise and variously interpretable to be characterized as statements of fact. It simply is not possible to define with any precision what it means to possess a "substantive understanding" of the law, or to be able to communicate views effectively, or to be willing to engage in appropriate give and take. These statements are lacking in precise, objective content; rather, their meaning is open to speculation. The statements become meaningful only when the reader supplies his or her subjective definition of, for example, "substantive understanding" of the law.

Second, the assertions are not capable of verification, in large part because they are lack precise content. Statements that mean different things to different people naturally cannot be proved or disproved.

Third, the Court must consider the literary context of the statements, in this case a letter marked "confidential" and directed to a federal regulatory employee's supervisor. The purpose of the letter on its face was to lodge a complaint about the treatment received from plaintiff and to ask that future dealings with the agency be through another employee. The defendants were not seeking plaintiff's discharge and were not accusing him of corruption or

impropriety. They merely sought through proper channels relief from what they viewed as a frustrating situation.

The defendants could hardly have expected plaintiff's supervisor to be receptive to their request had they not cited some particulars about the situation they found so frustrating. As an expression of the defendants' complaints about their own experiences with the plaintiff, the letter tends to put the reader on notice that the contents are expressions of opinion, not statements of objective fact.

The final factor is the social context of the statements. The First Amendment requires consideration of the public or political arena in which the statement is made, and whether the statement implicates core values of the First Amendment. *Janklow*, 788 F.2d at 1303. Here, citizens required by law to deal with a federal regulatory agency complained about the way they were treated. The right of the American people to complain about the way their government treats them is indeed a core concern of the First Amendment. *See McDonald v. Smith*, 472 U.S. 479, 482, 105 S.Ct. 2787, 2789, 86 L.Ed.2d 384 (1985) (right to petition cut from same cloth as freedoms to speak, publish, and assemble). As the Seventh Circuit Court of Appeals said, "A scurrilous anonymous letter or an attempt to marshal political clout to ruin an offending agent would certainly present different cases than does this open straightforward petition lodged through what the parties agree to be the proper and established channels." *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1343 (7th Cir.1977).

In conclusion, the disputed statements in this case are imprecise, unverifiable, presented in a forum where opinions are expected, and involve criticism through the appropriate channels of a government official's treatment of a citizen. The assertions are opinions protected by the First Amendment and plaintiff's complaint fails as a matter of law.