Fremont-Smith, Thayer, J.
In September 2001, plaintiffs and Falmouth Public Schools entered into a multi-million dollar contract to renovate Falmouth High School. Issues that arose in the performance of that contract led to its termination in June 2006.[1]
This action arises from an article published regarding comments that the defendant[2] made at a parental forum regarding the delays in the Falmouth High School renovations. The plaintiffs allege that statements in the article were defamatory and damaged their reputation. The defendants now move for summary judgment pursuant to Mass.R.Civ.P. 56(c), arguing that the statements are not actionable because they are (1) opinions, (2) protected by conditional *241 privilege, and (3) some of the alleged statements, in any event, do not meet the definition of defamation.
BACKGROUND
On September 21, 2001, ARCADD, Inc. entered into a four million dollar contract with the Falmouth Public Schools (“Falmouth”) to renovate Falmouth High School (“the Project”). ARCADD is in the business of providing architectural services and Hisham Ashkouri is the president of ARCADD.
By letter to the plaintiffs dated April 26, 2006, Falmouth, through its legal counsel, indicated that it desired to terminate ARCADD’s contract “on the grounds of convenience.” In that letter, Falmouth also requested that ARCADD provide a billing of its claims. On May 26, 2006, ARCADD provided Falmouth with a list of the billings for the Project to be paid by Falmouth totaling $2,021,007.44. By letter dated June 2, 2006, counsel for Falmouth provided ARCADD with a summary of Falmouth’s claims against ARCADD for errors and omissions on the Project, which totaled $3,408,485.
On June 9, 2006, ARCADD sued Falmouth for breach of contract and Falmouth filed a counterclaim on June 29, 2006.[3] Also on June 29, 2006, Falmouth terminated the agreement with ARCADD “for cause.” Sometime shortly after ARCADD’s agreement with Falmouth was terminated, Falmouth entered into a contract with DiNisco Design Partnership of Boston to complete the design work on the Project.
On August 21, 2006, Katherine Craven (“Craven”), executive director of the Massachusetts School Building Authority, wrote the Town of Falmouth seeking “written notification ... about the legal proceedings in connection with the Falmouth High School Project... [and] background information and an overview of the circumstances.” In response, defendant Marc Dupuis (“Dupuis”), Assistant Superintendent of Finance and Human Resources, sent Craven a letter dated September 6, 2006 including, inter alia the Verified Complaint; Falmouth’s Answer and Counterclaim; the Affidavit of Hisham Ashkouri; and ARCADD’s Answer to the Counterclaim. In his letter, Dupuis wrote, “Falmouth has terminated ARCADD’s contract for cause.” The plaintiffs allege this statement is defamatory.
In the spring of 2007, there was an outcry from parents of Falmouth who were concerned about the delays in completion of the Project and the impact the ongoing construction was having on their children. To address the parents’ concerns, Falmouth set up monthly parent forums as a way to inform parents on the progress of the Project. In their role as Chairman of the Falmouth School Committee and Assistant Superintendent of Finance and Human Resources, respectively, defendants Patterson and Dupuis attended a parent forum on June 13, 2007. Dupuis and Patterson did not invite the press to come to the parent forums, nor did they prohibit the press from attending. At the June 13, 2007 meeting, parents queried Dupuis and Patterson, inter alia, about construction delays on the Project.
On June 15, 2007, an article written by Christopher Kazarian appeared in the Falmouth Enterprise reporting what had purportedly occurred at the June 13 parent forum regarding the Project. The article reported that Dupuis, when asked about the cause behind the delays in construction, “attributed it primarily to the first architect, Hisham B. Ashkouri of ARCADD.” According to the article Dupuis also stated that when DiNisco was hired to take over the Project “he inherited a project that was poorly designed and had to be modified to meet the building code.” “If there is one main reason [for the delays], that is the one” Dupuis is quoted as saying.[4] Patterson is reported to have agreed, stating, “We’d be in worse shape today if we stuck with the original architect,” and to have alleged that Ashkouri “was not competent when it came to properly designed the school, managing the project, and supervising the construction.” Later in the article, Patterson is alleged to have told the parents, ‘To complicate it. . . the contractor can look at opportunities to increase costs through change orders of poor architectural drawings.” ‘To pin them down to dates is going to be a real challenger, but the architect is good at that. He is looking for ways to cut corners and save time.”
The plaintiffs allege that the above eight statements are defamatory.
DISCUSSION
As stated in Godbout v. Cousens, 396 Mass. 254, 258-59 (1985), “while we favor the use of summary judgment procedures in defamation cases, New England Tractor-Trailer Training of Conn., Inc v. Globe Newspaper Co., 395 Mass. 471, 480 (1985), the defendants must still meet the usual burden under rule 56 of demonstrating by evidence ‘considered with an indulgence in the plaintiffs favor,’ the absence of disputed issues of material fact and their entitlement to judgment as a matter of law. National Ass’n of Gov’t Employees, Inc. v. Central Broadcasting Corp., 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980). Because the issue of actual malice involves a determination of state of mind, summary judgment will frequently be inappropriate in defamation cases, Hutchinson v. Proxmire, 443 U.S. 111, 120 n.9 (1979). However, the issue of actual malice ‘is not automatically a jury question.’ Aarco, Inc. v. Baynes, 391 Mass. 560, 564 (1984). The plaintiff is entitled to a jury trial if there is some indication before the motion judge from which an inference of actual malice — knowing falsehood or reckless disregard of the truth — could be drawn. Id., Central Broadcasting Corp., supra. See Reader’s Digest Ass’n v. Superior Court, 37 Cal.3d 244, 252 (1984), petition for cert. filed sub nom. Synanon Church v. Reader’s Digest Ass’n, 53 U.S.L.W. 3619 *242 (U.S. Feb. 26, 1985). The Role of Summary Judgment in Political Libel Cases, 52 S.Cal.L.Rev. 1783, 1820-21 (1979).”
Nevertheless, while there are limitations on the invocation of summary judgment, “[allowing a trial to take place in a meritless case would put an unjustified and serious damper on freedom of expression. Even if a defendant in a libel case is ultimately successful at trial, the costs of litigation may induce an unnecessary and undesirable self-censorship.” Salvo v. Ottaway Newspapers, Inc., 57 Mass.App.Ct. 255, 259 (2003), quoting Dulgarian v. Stone, 420 Mass. 843, 846 (1995).
To prevail on a claim of defamation, a plaintiff must establish that the defendant published a false or a true but malicious[5] defamatory statement regarding the plaintiff, capable of damaging the plaintiff s reputation in the community, which either caused economic loss or is actionable without proof of economic loss. Phelan v. May Dept. Stores Co., 443 Mass. 52, 55-56 (2004); Ravinkar v. Bogojavlensky, 438 Mass. 627, 629-30 (2003); see also Restatement (Second) of Torts §558 (1977). The level of fault required for a false statement to be defamatory varies between negligence (for statements concerning private persons) and actual malice (for statements concerning public officials and public figures). Jones v. Taibbi, 400 Mass. 786, 797 (1987).
The threshold issue in a defamation action, whether a communication is reasonably susceptible of a defamatory meaning, is a question of law for the court. Foley v. Lowell Sun Publ’g Co., 404 Mass. 9, 11 (1989); see Restatement (Second) of Torts §614 (court decides whether communication is capable of particular meaning and whether such meaning is defamatory). A statement is defamatory if it “hold[s] the plaintiff up to contempt, hatred, ridicule, or scorn, or tends to impair his standing in the community.” Tartaglia v. Townsend, 19 Mass.App.Ct. 693, 696 (1985). “Statements alleged to be libelous must be interpreted reasonably.” King v. Globe Newspaper Co., 400 Mass. 705, 711-12 (1987).
To determine whether a statement can be defamatory, moreover, the court must decide whether it is a statement of fact or opinion, or a combination of both. Driscoll v. Board of Trs., 70 Mass.App.Ct. 285, 296 (2007). A defendant in a libel action is entitled to summary judgment if the challenged statements cannot reasonably be construed as assertions of fact. King, 400 Mass, at 709. Though the First Amendment does not protect false statements of fact, false opinions are not actionable because, as a legal matter, there is no such thing as a false idea. Cole v. Westinghouse Broad. Co., Inc., 386 Mass. 303, 308 (1982), quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974). However, a defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion. National Ass’n of Gov’t Employees, Inc. v. Central Broad. Corp., 379 Mass. 220, 227 (1979). “Our cases protect expressions of opinions based on disclosed information because we trust that the recipient of such opinions will reject ideas which he or she finds unwarranted by the disclosed information.” Lyons v. Globe Newspaper Co., 415 Mass. 258, 267 (1993). Opinions clearly based on disclosed facts, or on assumed nondefamatory facts, are not actionable no matter how unjustified, unreasonable, or derogatory the opinion may be. Lyons, 415 Mass, at 262.
Like the threshold question of whether a statement is susceptible of a defamatory meaning, the question of whether a statement unambiguously constitutes one of fact or of opinion, is a question of law for the court.[6] Myers v. Boston Magazine Co., 380 Mass. 336, 339 (1980). To determine this, the court must:
Examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.
Fleming v. Benzaquin, 390 Mass. 175, 180-81 (1983), quoting Cole, 386 Mass, at 309.
In deciding whether the Court can rule, as a matter of law, that a statement is not defamatory or unambiguously a statement of opinion, it is important to note the context and circumstances surrounding the defendants’ statements. The defendants were responding to concerns and questions of parents as to the Project delays at a forum, the very purpose of which was to allow the parents to express their opinions and ask questions about the cause of delay. The context of the meeting, where defendants’ opinions for the delay were solicited, is an indication that defendants’ statements would be understood by the reasonable parent, to be opinions. See Prisker v. Brudnoy, 389 Mass. 776, 782 (1983) (statements of restaurant critic during critical conversation and only in response to comments of guest that restaurant owners were “unconscionably rude and vulgar” and “pigs” were nonactionable statements of opinion); and Reilly v. Associated Press, 59 Mass.App.Ct. 764, 771 (2003) (dog owner’s statements in newspaper article that veterinarian provided “sloppy” and “lazy” treatment causing the family dog’s death would be recognized by the reasonable reader to be “generalizations uttered by a distraught dog owner”).
Indeed, the statements attributed to Dupuis contain “cautionary terms” which clearly indicate that he was offering his opinion. His alleged statements that he “attributed [delays] primarily to the first architect”; that DiNisco “inherited a project that was poorly de *243 signed”; and “If there is one main reason [for the delays], that is the one,” all contain “cautionary terms” and generalizations denoting an opinion. See Cole, 386 Mass, at 312 (statements that reporter was fired for “sloppy and irresponsible reporting” and a “history of bad reporting techniques” could only be viewed as expressions of opinion regarding reporter’s abilities). Whether the delays were “primarily” the fault of the first architect, whether the project was “poorly designed” and if there is “one main reason” for the delays are all imprecise expressions of opinion. The meaning of these statements is imprecise, open to speculation and cannot be proved false. Id. The statement that Dupuis “attributed [delays] primarily to the first architect” is also too vague to be actionable because the reader does not know what words Dupuis actually used to convey this message; it is the reporter’s own characterization of Dupuis’ purported statement.
The statement “[the project] had to be modified to meet the building code” appears to be a disclosed fact that is not defamatoiy and was used to explain some of the delays. Even if the statement was false, it did not hold the plaintiffs up to contempt, hatred, ridicule, scorn or impair their standing in the communiiy. Architectural plans are often modified and it would be reasonable to believe that a plan of this magnitude would have to be adjusted as construction occurred or as unforeseen problems arose. The statement does not accuse the plaintiffs of any unlawful conduct or malpractice.
Patterson’s statements, “We’d be in worse shape if we stuck with the original architect” and Ashkouri “was not competent when it came to properly designed the school, managing the project, and supervising the construction” are similarly statements of pure opinion and could not reasonably be viewed at statements of fact. Whether Falmouth would be in worse shape if they stuck with ARCADD and whether Ashkouri was not competent are inherently subjective questions and open to speculation. As noted above, a simple expression of opinion based on disclosed or assumed nonde-famatory facts is not sufficient for an action of defamation no matter how unjustified and unreasonable the opinion may be or how derogatory it is. Lyons, 415 Mass, at 262. Furthermore, “worse shape” and “not competent” are broad descriptive terms, susceptible to varying interpretations. Considering the context in which the statements were offered — responding to questions at a parent forum — it is clear that these statements are generalized opinions and not actionable. See Scott v. Sulzer Carbomedics, Inc., 141 F.Sup.2d 154, 179 (D.Mass 2001) (voicemail listener more likely to perceive statements that employee was “disorganized” and “ill-prepared” as a generalized opinion rather than one based on a particular set of facts). Anyone listening to the statements would likely treat Patterson’s remarks as reflecting his general opinion rather than associate the words with any particular set of facts. Scott, 141 F.Sup.2d at 179, citing Friedman v. Boston Broadcasters, Inc., 402 Mass. 376, 379-80 (1988) (callingplaintiffs “insurance crooks,” who engaged in “insurance fraud” was likely to be considered a statement of opinion rather than fact).
The last two statements by Patterson are also unambiguously not defamatoiy. Patterson told the parents, “To complicate it. . . the contractor can look at opportunities to increase costs through change orders of poor architectural drawings” and “To pin them down to dates is going to be a real challenger, but the architect is good at that. He is looking for ways to cut comers and save time.” The reference to “poor architectural drawings” is an opinion for the reasons discussed above. The rest of the statements do not refer to the plaintiffs, but to the contractor and the new architect that was hired after ARCADD. There is nothing in these two statements that would subject the plaintiffs to contempt, hatred, ridicule, or scorn.
Finally, the statement in the September 6, 2006 letter from Dupuis to Craven that “Falmouth has terminated ARCADD’s contract for cause” is not defamatory as Falmouth had on June 29, 2006, terminated ARCADD’s contract “for cause.”
Because the Court finds that all of the challenged statements are nonactionable because they were unambiguously not defamatoiy or were opinions, the Court does not reach the additional question of whether they were, in any event, protected by conditional privilege.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ motion for summary judgment be ALLOWED. Final judgment shall be entered dismissing the plaintiffs’ consolidated action.

 Plaintiff brought suit in Barnstable Superior Court for unpaid fees and the Town counterclaimed for alleged deficiencies in plaintiffs architectural plans. The jury returned a verdict against the Town for $1,530,374.98 and a verdict against the Town on its counterclaim.

 For all relevant times, defendant Marc Dupuis was the Assistant Superintendent of Finance and Human Resources for the Falmouth Public Schools and defendant Samuel H. Patterson, Jr. was the School Committee Chairman for the Falmouth Public Schools.

 See footnote 1, supra.

 This is the only verbatim quotation attributed to Dupuis in the article.

 “By statute, Massachusetts permits a plaintiff to recover for a truthful defamatoiy statement published in writing (or its equivalent) with actual malice, G.L.c. 231, §92, except as confined by the requirements of the First Amendment to the United States Constitution.” White v. Blue Cross & Blue Shield of Mass., Inc., 442 Mass. 64, 66 n.4 (2004).

 However, where the communication is susceptible of both a defamatoiy and nondefamatory meaning, a question of fact exists for the jury. Jones v. Taibbi, 400 Mass. 792 (1987).