Gardner, J.
The plaintiff, Cathleen Santosus (“Santosus”), appeals the entry of summary judgment dismissing her claims of defamation, libel, and intentional infliction of emotional distress against the defendants, Media Education Foundation, Inc. (“MEF”), Valley Free Radio, Inc. (‘VFR”), and three of VFR’s directors, Noemi Valentin (‘Valentin”), Cheryl Alexander (“Alexander”), and Robert Gardner (“Gardner”).[3]
We recite the facts in the light most favorable to Santosus. Nelson v. Salem State College, 446 Mass. 525, 530 (2006). MEF established a community radio project through VFR in the Northampton, Massachusetts area. MEF held the license and transmitter rights, which VFR used to broadcast its programming. Valentin, Alexander, and Gardner were members of VFR’s board of directors.
In April, 2004, Santosus joined VFR as a volunteer and member. In July, 2004, she was elected to the board of directors. Santosus also volunteered on the board’s communications committee. Santosus, in her capacity as director, proposed several policies and drafts of governing rules for adoption by the full board. During the summer of 2005, Santosus and several of VFR’s board members were in disagreement over her draft proposals. The disagreement engendered spirited debate within the board membership.
On September 9, 2005, Valentin sent an e-mail to Santosus and other individuals. In the e-mail, the subject line of which stated, “Cathy Santosus Racist Actitudes [sic] and Behavior,” Valentin wrote, “The last email exchange about the Domino Model is a perfect example of Cathy Santosus [sic] racist reactions and actions to block any *121 thing that has a hint of giving power to people of color in the organization.... Again, this is just the latest example to illustrate the racist actitudes [sic] that need to be addressed before VFR’s [sic] can continue working toward realizing its Mission and Vision.”
On the same day, Alexander responded to Valentin’s e-mail. In her response, which she e-mailed to Valentin and other individuals, Alexander wrote:
[T]hank you to those who have been addressing this RACISM for a while now, and my gratitude also, to the people who have just recently ‘directly’ addressed the latest ‘racially motivated’ expressions of disrespect and derision of Ms. Santosus toward the ideas, and wishes of the people of color in this organization.
At this point, I ask, once again, perhaps more directly this time, that the other white people in the organization recognize their privilege, and address this issue immediately. Your (apparent) disinclination to ‘collectively’ address and resolve Ms. Santosus’ alarmingly successful RACIST words and actions, has unfortunately been conviction that I am being tok-enized as ‘Co-Cháir on the Board of Directors.’
Ms. Santosus said, and I quote: ‘If you want to say I’m racist, be my guest.’ Therefore, I say, ‘Cathy, you are transparently racist, and your motivation is not aligned with the mission and guiding vision of this organization. This is why you tried for so long to stifle and squash the efforts of the organization to draw these documents up. This is why, they have been buried on our website, instead of being displayed with pride, for all to see, and continue to be hidden.’
Valentin issued another e-mail on September 9,2005, stating:
VFR need [sic] to connect to their friendly networks, and that includes all the communities of the Valley: white and non white. Therefore, I choosed [sic] to divided [sic] the process into two steps: first, the general concept of face to face networking, and then, when that was approved, deal with the other more difficult part, (as we are seeing, the most problematic given the racism on the part of some members, specifically Cathy Santosus, the only one opposing the approval of the Board of the [Domino] Model as the official one for VFR) which we have posponed [sic] to put in writing ....
Thereafter, at a VFR board meeting on September 20, 2005, Valentin and Alexander introduced a written statement, which later became known as the “Strike Letter,” that was read by Alexander to the board. The statement alleged, inter alia, that VFR is hostile to people of color and that “issues of racism have been largely ignored.” After the Strike Letter had been read at the board meeting, Alexander read another statement that specifically named Santosus. The board then voted no confidence in Santosus during an executive session of the meeting of the board.
At a subsequent board meeting held on October 5, 2005, a letter dated that same *122 day and signed by, among others, Valentin and Alexander, was circulated to board members. That letter stated, in part, that “a minority of individuals in the organization” had “sown obstruction, division, racism, deceit and confusion.” The letter also called for the board to dismiss Santosus from the organization.
Approximately two days later, Gardner disseminated an e-mail to Santosus and other individuals, stating:
I cannot begin to speak for people of color in terms of how they experience relating to you, and generally won’t try, except to say that you appear generally to be dismissive and disrespectful, and then when criticized, assume the victim role, and try to rally support against your ‘attackers.’ How can we build a multicultural/multiracial organization, but reject working with people of color who are here to build it with us.
Gardner also wrote that Santosus “malign [ed] individuals [sic] VFR to the press, while you were in the position of press spokesperson,” which Gardner speculated Santosus knew to be true given her agreement to resign from that position. Gardner also questioned how a private e-mail exchange between Gardner and another “just happened to ‘fall’ into [Santosus’] lap,” speculating, “Is it just coincidense [sic] that stolen email ends up in the hands of the webmaster?”
Santosus brought this action on November 29, 2006, alleging libel against MEF, VFR, Valentin, and Alexander; defamation against Gardner; and intentional infliction of emotional distress against all defendants. Following discovery, the defendants moved for summary judgment. Upon ruling that the alleged defamatory statements were nonactionable statements of opinion, the trial judge granted summary judgment for the defendants on all counts.
1. Defamation,[4] “Summary judgment is appropriate when ‘there is no genuine issue as to any material fact and... the moving party is entitled to judgment as a matter of law.’” Symmons v. O’Keeffe, 419 Mass. 288, 293 (1995), quoting Mass. R. Civ. R, Rule 56(c). “[The] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates ... that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Id., quoting Wheatley v. American Tel. & Tel. Co., 418 Mass. 394, 397 (1994). See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991) (moving party’s “burden need not be met by affirmative evidence negating an essential element of the plaintiff’s case, but may be satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial”).
“[S]ummary judgment procedures are especially favored in defamation cases,” King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987), because allowing a trial to take place in a meritless case “would put an unjustified and serious damper on freedom of expression.” Id., quoting National Ass’n of Gov’t Employees, Inc. v. Central *123 Broadcasting Corp., 379 Mass. 220, 233 (1979). “Even if a defendant in a libel case is ultimately successful at trial, the costs of litigation may induce an unnecessary and undesirable self-censorship.” Id.
To withstand a motion for summary judgment on a claim for defamation, a plaintiff must show that (1) the defendant made a statement about the plaintiff to a third party; (2) the statement could damage the plaintiffs reputation in the community; (3) the defendant was at fault in making the statement; and (4) the statement either caused the plaintiff economic loss, or is actionable without proof of economic loss. Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-630 (2003). Generally, while “[s]tate-ments of fact may expose their authors or publishers to liability for defamation,” King, supra, “Statements of opinion are constitutionally protected and thus are not actionable.” Friedman v. Boston Broadcasters, Inc., 402 Mass. 376, 379 (1988). See King, supra at 708-709, quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-340 (1974) (“However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact.”).
An opinion can support a defamation claim, however, if it “implies the allegation of undisclosed defamatory facts as the basis for the opinion.” Lyons v. Globe Newspaper Co., 415 Mass. 258, 262 (1993), quoting RESTATEMENT (SECOND) OF TORTS §566 (1977). See Tech Plus, Inc. v. Ansel, 59 Mass. App. Ct. 12, 22 (2003), citing Ward v. Zelikovsky, 136 N.J. 516, 538 (1994) (accusation of bigotry may be actionable where it is made “in such manner or under such circumstances as would fairly lead a reasonable listener to conclude that [the person making the accusation] had knowledge of specific facts supporting the conclusory accusation”). But an expression of opinion “based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is,” Lyons, supra, quoting RESTATEMENT (SECOND) OF TORTS §566 comment c, “because we trust that the recipient of such opinions will reject ideas which he or she finds unwarranted by the disclosed information.” Id. at 267. “The determination whether a statement is one of fact or opinion is generally considered a question of law.” Reilly v. Associates Press, 59 Mass. App. Ct. 764, 769 (2003), quoting Cole v. Westinghouse Broadcasting Co., 386 Mass. 303, 309 (1982).
In this case, the trial judge correctly granted summary judgment to the defendants on the ground that the alleged defamatory statements were constitutionally protected expressions of opinion. In reaching this conclusion, the trial judge, in a well-reasoned memorandum, applied the test articulated in Cole v. Westinghouse Broadcasting Co., which instructs that the court must examine a challenged statement in its totality and in the context in which it was made; consider all the words used and give weight to cautionary terms used by the defendant; and consider all the circumstances surrounding the statement. Id. at 309. Applying these principles, the trial judge determined, correctly, that the communications implied no defamatory facts, as the defendants provided their reasons supporting their opinions in the communications, which would permit a third party, upon review of the communications, to accept or reject the opinions based on review of the disclosed nondefamatory facts. See Lyons, supra at 266. Cf. Tech Plus, Inc., supra at 12, 24-25 (vacating summary judgment for defendant on plaintiffs defamation claim where evidence in *124 record of assertion of racism based on disclosed defamatory facts). The conclusion of the trial judge that the challenged statements were nonactionable was further supported by the fact that they were uttered in the context of a heated debate among the VFR board of directors relative to policy differences.
2. Intentional Infliction of Emotional Distress. Santosus also claims the tort of intentional infliction of emotional distress. To prove said tort, the defendants’ intentional conduct must have been extreme and outrageous. This means that liability will be imposed only for conduct that extends beyond all reasonable bounds of decency; that which reasonable men in a civilized community would not deem tolerable. The defendant’s conduct must approach “a high order of reckless ruthlessness or deliberate malevolence that... is simply intolerable.” Conway v. Smerling, 37 Mass. App. Ct. 1, 8 (1994).
We agree with the trial judge that the statements, no matter how offensive to Santosus, must be protected as expressions of the defendants’ opinions. See Lachance v. Boston Herald, 78 Mass. App. Ct. 910 n.4 (2011). Therefore, the claim for intentional infliction of emotional distress must also fail.
3. Motion to Compel Production of Documents. Santosus also appeals the trial judge’s denial of her discovery motion to compel the production of additional documents. Santosus sought discovery from MEF and VFR, the two corporate defendants. VFR argued to the judge that the documents sought were in the nature of documents sent to the Federal Communications Commission (“FCC”), as well as other documents such as vendor agreements and grievance policies and procedures, and thus were not relevant to the case. The judge denied the motion to compel and denied a request for reconsideration of his decision. The judge did not specifically state his reasons for the denials.
Generally, the Massachusetts Rules of Civil Procedure governing discovery are designed to accomplish the broadest discovery possible, consistent with fairness. Courts have extensive powers when it comes to discovery requests. Mass. R. Civ. R, Rule 37. The Rules provide for a considerable measure of discretion in their application.
This Division agrees that the relevancy of the documents requested from the two corporate defendants to the issues presented in this case was attenuated at best, and will not disturb the trial judge in the exercise of his discretion.
Santosus also sought additional discovery from the three individual defendants in the nature of e-mails from said individual defendants and, in some cases, e-mails from the two corporate defendants. This request in the nature of a motion to compel was also denied by the motion judge.
Initially, Santosus had requested all e-mails that referred to her as a racist, or words to that effect. Those e-mails were provided by the defendants. She then expanded her request to include e-mails that made any reference to her at all, in any nature or form. This was the subject of the motion to compel, which the judge denied and denied on her request for reconsideration. At the motion hearings, the defendants argued that said request was unduly burdensome and expensive; however, their position was not supported by an affidavit. Dist./Mun. Cts. Supp. R. Civ. R, Rule 105 does provide that the court need not hear a motion grounded on fact, unless the facts are verified by affidavit or are apparent upon the record and files.
Santosus argues that the trial judge’s denial was an abuse of discretion because *125 the only affidavit in the record was from Santosus’ attorney in support of the additional discovery request. It would appear from the record that Santosus had received all material discovery, i.e., any e-mails and other documents that referred to her as a racist. It would also appear that her additional demands for any and all documents referring to her in any way were immaterial and created an unnecessary burden on the defendants. We conclude that the trial judge, even in the absence of an affidavit, could determine from the record that all documents material to Santosus’ claims had been provided by the defendants. Therefore, we will not disturb the motion judge in the exercise of his discretion.
Judgment affirmed.
So ordered.

 This Division states that Justice Robert W. Gardner, Jr. is not related to, and has never met, the defendant with the same name in this case.

 “Defamation encompasses the torts of libel and slander — the one being in general written while the other in general is oral.” Draghetti v. Chmielewski, 416 Mass. 808, 812 n.4 (1994).