Louis M. Herman Co., Inc. *vs.* Gallagher Electrical Co., Inc.

Suffolk.  March 8, 1956. — November 13, 1956.

Present: Wilkins, C.J., Ronan, Counihan, & Whittemore, JJ.

*Contract*, What constitutes, Building contract.  *Estoppel*.  *Damages*, For breach of contract.  *Words*, "Approval."

A written order given by the electrical subcontractor on a school building construction project to a supplier, and accepted in writing by the supplier, for a certain make of sound equipment "as per plans and specifications.  Subject to approval of architect and engineer" constituted a binding contract for furnishing and installing the equipment subject to such approval thereof;  the requirement of such approval was not a condition precedent to the taking effect of the order or its ripening into a contract.  [654–655]

A finding that the electrical subcontractor on a school building construction project was estopped from denying the existence of a contract with a supplier for furnishing and installing sound equipment by reason of the giving of an order for the equipment by the subcontractor and acceptance of the order by the supplier was warranted by evidence of activities on the part of the supplier following such order in preliminary planning, procurement and fashioning of material, delivery of some of the equipment to the site of the work, and numerous conferences with the electrical engineer and with the subcontractor, all to the subcontractor's knowledge and without objection by him.  [656–657]

Upon an improper cancellation by an electrical subcontractor of a contract with a supplier for the furnishing and installation of certain sound equipment by the supplier in a school building under construction, the supplier would be entitled to be made whole in damages, including profits.  [657–658]

Contract.  Writ in the Superior Court dated September 15, 1954.

The action was heard by *Swift*, J., without jury.

*Julius Thannhauser*, for the plaintiff.

*Albion L. Hogan*, for the defendant.

Ronan, J.  These are the plaintiff's exceptions taken at the trial of an action to recover damages for breach of contract against the defendant, a subcontractor, to which had

been awarded the furnishing and installation of the electrical portion, including the sound equipment, of the main contract for the construction of a high school for the town of Saugus. The judge denied the plaintiff's requests for rulings and found for the defendant.

The specifications for the electrical subcontract, which were a part of the main contract, contained the following: "Wherever materials or equipments are specified by trade name or by reference to the catalog of any manufacturer, it shall be understood to establish a standard, and it shall be binding on the contractor to supply the particular item specified and material equal in every respect as to quality, finish, durability and serviceability. This equality shall be determined solely by the Architects. This contractor shall submit a list of all materials and equipment for approval before purchasing. This list shall include type of material, manufacturer's name, trade name, size and style, cuts, drawings and specifications. . . . Sound System Furnish and install a complete satisfactory operating Sound and Telephone System similar to a Stromberg-Carlson Model 200 System as herein modified or its approved equal. . . . Two Channel Centralized School System equipped with . . . (d) AM-FM Radio similar to Stromberg-Carlson Model 401 tuner. . . . Loudspeakers . . . The 8″ wall type speakers shall be housed in a Stromberg-Carlson Model RH–26 speaker cabinet. . . . The Auditorium shall be equipped with two co-axial speakers of the 15″ variety similar to Stromberg-Carlson Model #475 . . . . The Speech Room, Studio #1 and Studio #2 shall be equipped with Stromberg-Carlson Model RF–471 co-axial loudspeakers . . . . The Gymnasium speakers shall consist of two speaker clusters suspended from the ceiling at a height of 25′ from floor level. These clusters are to be each equipped with three Stromberg-Carlson Model RF–471 co-axial Loudspeakers complete with line transformer and mounted in Stromberg-Carlson type RV–471 Loudspeaker Cabinets. . . . Microphones Furnish and install Stromberg-Carlson type MD–35 microphones or their approved equal for the following locations . . . . [Un-

der wiring there appears:] The entire cable shall be enclosed within an overall polyvinal chloride jacket. It shall be similar to Stromberg-Carlson type FP–4."

The plaintiff on January 22, 1954, submitted a written bid to the defendant for an RCA sound equipment as per plans and specifications, including various items of equipment and shop drawings and schematics. The bid was for $8,890. On January 29, 1954, an agent of the plaintiff visited the defendant's place of business where he discussed with the defendant's representative the awarding of the sound equipment contract. The latter during the conference telephoned to one Kimball, the electrical engineer on the main contract, apparently concerning the reliability of the plaintiff and the quality of its goods, and then had the plaintiff's agent talk with Kimball. The telephone talk finished, the defendant's representative dictated to the plaintiff's agent the following purchase order addressed to the plaintiff: "1 RCA Sound System As per Plans and Specifications. Subject to Approval of Architect and Engineer. Prices as Per Louis M. Herman Quotation of 22 Jan. 1954." This was accepted in writing in behalf of the plaintiff and was also signed in behalf of the defendant.

The principal controversy between the parties arises out of the construction of this purchase order of January 29, 1954. The defendant contends that it was given subject to the approval of the architect and engineer and that such approval was a condition precedent to the order becoming a contract. In other words, the purchase order, lacking the approval of the architect, never ripened into a contract. The defendant relies mainly on *Howland* v. *Plymouth*, 319 Mass. 321, 324, where it was said with an ample citation of authority: "The taking effect of a written instrument may by the understanding of the parties to it be made subject to a condition precedent of this kind, even though the condition rests only in parol, and even though physical delivery of the instrument has been made by one party to the other and, in this Commonwealth, even though the instrument is under seal."

The plaintiff's main contention is that the subject to approval clause does not refer to the acceptance of the contract but refers to the substitution of one sound equipment for another, and that the order executed by both parties constituted a binding agreement between them.   It relies upon *Nigro* v. *Conti,* 319 Mass. 480, where an informal original agreement dealing with the sale of a liquor business called for the execution of a formal agreement if the licensing commission approved the sale.   It was said, at page 482, "that the agreement is made conditional upon the approval of the commission, and that, if the commission does not approve, the agreement ceases to be binding, but if the commission does approve the agreement remains binding, and the parties are to proceed within a reasonable time to embody its terms in a more formal instrument providing in detail a convenient method of carrying it into effect." See also *Bridges-Wilson Corp.* v. *University Contracting Co.* 314 Mass. 257; *Coan* v. *Holbrook,* 327 Mass. 221.

The construction of the purchase order in the instant case was a question of law for the court's determination. *Rizzo* v. *Cunningham,* 303 Mass. 16, 20–23. *Atwood* v. *Boston,* 310 Mass. 70, 74–75.

The present case is stronger than *Nigro* v. *Conti, supra,* for here the parties did not intend to make any contract other than the purchase order.   We think the order constituted a binding agreement between the parties hereto, at least pending in the usual course the approval or disapproval of the architect.

There was evidence that the electrical engineer was willing to assent to the installation of an RCA system; that the defendant's agent had telephoned to the engineer shortly before signing the order asking him if it was all right to give an order to the plaintiff for an RCA system; and there was testimony from the engineer that he had been the engineer on many contracts where RCA equipment had been installed and which he found to be satisfactory and equivalent to the Stromberg-Carlson sound equipment, and that he had recommended it in the instant case to the architect.   He further

testified that he approved the equipment electrically, and that when it was finally installed he would check it against the specifications and give a final approval to the architect. The electrical engineer, on whom, because of the complex nature of the equipment, the architect had to depend in giving his approval, had sent the architect a letter approving the RCA system as to type and quality.

The architect, however, never formally approved the installation of the RCA system. Approval "signifies the application of sound judgment to a proposition emanating from another source and submitted for investigation. It requires the exercise of faculties of criticism and discrimination. It denotes positive sanction." *Simpson* v. *Marlborough*, 236 Mass. 210, 214. *Leroy* v. *Worcester Street Railway*, 287 Mass. 1, 7. The architect, according to his own testimony, was hampered by a member of the building advisory committee — a body having no authority to interfere — and if left to his own judgment he would without question have approved the RCA system. The parties were entitled to his honest judgment, free from arbitrary or capricious action or one tainted with fraud. *Benjamin Foster Co.* v. *Commonwealth*, 318 Mass. 190, 208. Here he failed to decide a question it was his duty to decide. *Hebert* v. *Dewey*, 191 Mass. 403, 409. *Hurley* v. *Boston*, 244 Mass. 466. *Sikora* v. *Hogan*, 315 Mass. 66, 69–70.

The plaintiff had secured the material necessary to complete the job before it had learned, about the first of August, 1954, that the defendant was contemplating the cancellation of the contract, and that the defendant was raising the question whether there was a contract between them because of the failure of the architect to approve the RCA system. There was evidence that within a few days after the execution of the purchase order the plaintiff commenced work under this contract and in the course of the work had prepared sketches, drafts and layouts, had secured and fashioned some of the material, and had delivered fifty small speaker boxes to the site. Besides it had conferred frequently with the electrical engineer and with the defend-

ant. The defendant knew of such activities and made no objection. There was here evidence of estoppel of the defendant to deny the existence of a contract with the plaintiff. *Boston & Albany Railroad* v. *Reardon,* 226 Mass. 286. *Commonwealth Finance Corp.* v. *Holland System, Inc.* 263 Mass. 10. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52. *National Development Co.* v. *Gray,* 316 Mass. 240. *Jerome* v. *Eastern Finance Corp.* 317 Mass. 364.

The judge made no findings of fact other than the general finding for the defendant. The plaintiff made five requests for rulings,[1] all of which were denied. There was evidence that the plaintiff at the request of the defendant commenced work a few days after the purchase order was signed so as to have the electrical work keep pace with the construction of the structure, that all the preliminary engineering work was completed about the first or fifteenth of June, 1954, and that fifty speaker boxes were delivered to the site on July 26, 1954. This evidence, together with evidence of many conferences between the plaintiff and the electrical engineer in regard to the work, without any objection from the defendant, tended to point toward an estoppel. There was error in refusing the first request that the evidence warranted a finding for the plaintiff. *Perry* v. *Hanover,* 314 Mass. 167. *Rummel* v. *Peters,* 314 Mass. 504. *Hoffman* v. *Chelsea,* 315 Mass. 54. Whether there was an estoppel, where it is possible to draw more than one inference from the evidence, was a question of fact, *Boston & Albany Railroad* v. *Reardon,* 226 Mass. 286, 291, *Taylor* v. *Jones,* 242 Mass. 210, 216; and there was no error in refusing the second or third requests. If the plaintiff was entitled to prevail, it was entitled to be made whole as stated in the

---

[1] The plaintiff made the following requests for rulings: "1. The evidence warrants a finding for the plaintiff. 2. The evidence does not warrant a finding for the defendant. 3. There is no evidence to warrant a finding for the defendant. 4. If the plaintiff entered into a contract with the defendant, as set forth in Exhibits 'A' and 'B' attached to the plaintiff's declaration and the defendant thereafter cancelled the said contract, the plaintiff would be entitled to recover damages for breach of the said contract. 5. As a matter of law, the plaintiff is entitled to recover its loss of profit on the said contract."

fourth request including profits as set forth in the fifth request. *Gagnon* v. *Sperry & Hutchinson Co.* 206 Mass. 547. *Mount Pleasant Stable Co.* v. *Steinberg,* 238 Mass. 567. *Bucholz* v. *Green Bros. Co.* 272 Mass. 49. *Associated Perfumers, Inc.* v. *Andelman,* 316 Mass. 176. *Eastern Paper & Box Co. Inc.* v. *Herz Manuf. Corp.* 323 Mass. 138.

*Exceptions sustained.*