H. H. HAWKINS & SONS COMPANY *vs.* RICHARD S. ROBIE
& another
(and a companion case[1]).

Suffolk.   October 8, 1958. — November 7, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN,
& CUTTER, JJ.

*Contract*, Building contract. *Evidence*, Relevancy and materiality; Opinion: expert; Judicial discretion; Ground of exclusion. *Agency*, What constitutes, Architect.

At the trial of an action by a builder against the owner of an apartment to recover an alleged balance due under an oral agreement for alterations made on a cost plus basis, evidence that figures submitted by the plaintiff were an "estimate of the cost of the work" and were "something approximate . . . as a sort of budget" warranted a finding that no maximum price was fixed by the agreement. [63]
At the trial of an action by a builder against the owner of an apartment to recover an alleged balance due under an oral agreement for alterations, there was no abuse of discretion on the part of the trial judge in

─────────────────
[1] The cross action mentioned in this opinion.

excluding the opinion of an expert, based largely on personal examination of the apartment, as to a fair charge for the work done where it appeared that his examination was three and one half years after completion of the work, that the apartment had been occupied in the interval, and that the nature and extent of some of the work done would not be apparent from his examination. [64–65]

There was no merit in an exception to a trial judge's refusal to "state . . . for the record" the ground of exclusion of testimony. [66]

Evidence, at the trial of an action by a builder against the owner of an apartment to recover an alleged balance due under an oral agreement for alterations on a cost plus basis, that architects engaged by the defendant supervised the job and that the defendant dealt with the plaintiff through the architects and promptly paid some of the bills from the plaintiff bearing the architects' approval warranted a finding that the architects were the defendant's agents in relation to the job and acted within the scope of their duties in approving bills submitted by the plaintiff, and the jury could not properly have been instructed to disregard their notations of approval on the bills. [66–67]

TWO ACTIONS OF CONTRACT, one commenced in the Municipal Court of the City of Boston by writ dated May 19, 1953, and the other commenced in the Superior Court by writ dated March 21, 1955.

Upon removal of the earlier action to the Superior Court, the actions were tried together before *Swift*, J.

*Albert W. Wunderly*, for Richard S. Robie and another.

*David D. Leahy*, for H. H. Hawkins & Sons Company.

CUTTER, J. This is an action by a corporation (hereinafter called the Hawkins Company) to recover a balance alleged to be due for labor and materials used on alterations made in 1951 to a coöperative apartment owned by the defendants in the principal action, one Robie and his wife. The Robies brought a cross action to recover for money alleged to have been "paid in excess by error for materials and labor supplied." The cases were referred to an auditor. His report was introduced in evidence at the jury trial, together with oral testimony. There were verdicts for the Hawkins Company. The cases are here on the Robies' bill of exceptions.

The following relevant facts appear in the auditor's report. The Robies engaged one Wills, an architect, to make plans for the alterations. At some time prior to May 4,

1951, the Robies, Wills, and one Hawkins, the president of the Hawkins Company, met. After discussion, Hawkins quoted "an approximate of the cost of such alterations and renovations" at between $12,000 and $15,000. The Hawkins Company undertook to do the work and Robie "agreed to pay for said alterations, renovations and materials the cost thereof to the . . . [Hawkins Company] plus 10% for overhead and 10% for profit, the total cost to be approximately $12,000 to $15,000." No oral testimony stated in the bill of exceptions contradicted the auditor's finding that the work was to be done on this cost plus basis. If, however, the auditor's finding, just quoted, purported to construe the agreement as imposing any maximum limit on the amount to be paid to the Hawkins Company, there was testimony at the jury trial from Hawkins and Wills that the figures submitted by the Hawkins Company were an "estimate of the cost of the work" and were "something approximate . . . as a sort of budget." This testimony would have warranted the jury in finding that no maximum price was provided by the agreement. See *Schwender* v. *Schrafft*, 246 Mass. 543, 545; *Blackhall* v. *Duthie-Strachan*, 258 Mass. 551, 553.

Some of the appliances originally contemplated to be furnished by the Hawkins Company were not supplied by it. Also, additional work was done and material furnished by the Hawkins Company from time to time at the request of the Robies, which the plans did not contemplate.

During the course of the work an aggregate of $22,219.66 was paid to Hawkins Company by Robie on the basis of four separate bills, dated respectively June 13, July 18, August 16, and September 14, 1951. Each bill was approved in writing for payment by the architect Wills or by one Minot, an architect associated with him. Two statements have not been paid. One, dated October 11, 1951, was for labor and materials furnished from August 31 to October 4, 1951, plus 10% for overhead and 10% for profit in the amount of $7,741.09 and the other, dated November 16, 1951, was for similar items amounting to $656.37 for four

days in October. Each of these statements was approved
for payment by Minot, who, for the most part, supervised
the work.

The oral testimony at the jury trial would have warranted
findings that, in addition to the initial conference or con-
ferences at which Wills, the architect, and Hawkins were
present, Wills "went upon the job after it was under way
about ten times and . . . he had an associate . . . Minot
. . . who gave the job more attention . . . and who was in
charge of the job." Minot "supervised the drawing of the
plans and the work as it progressed," and he "may have
been on the job three or four times a week." He had, how-
ever, no duty to keep the time of the men on the job or to
check the supplies, "since the architects were not clerks of
the work." Minot "thought that the labor and materials
charged for were furnished and that the charges were fair
and reasonable." Robie testified that he left the super-
vision "to Mrs. Robie and to . . . Wills." Mrs. Robie
testified that "she had known . . . Wills about thirteen
years; that he had done one major job for them, and one
not so large; that she had consulted with . . . Wills because
she had confidence in him."

1. One Olive, called by the Robies, testified to experience
in construction work in the navy and in civil life. Olive had
examined the apartment in 1955, three and one half years
after the work had been done, and had been told by Mrs.
Robie what the Hawkins Company had done in each room.
He had the blueprints for the work. During the course of
the direct examination of Olive, the trial judge intimated
to counsel for the Robies that the witness was not in a
position from an examination of an apartment, which he
first saw in February, 1955, after it had been lived in for
three and a half years following the alterations, to draw a
conclusion as to the value of the work done, in view, among
other matters, of the changes since 1951 when the work was
done. The witness was asked at the end of his testimony
if he had calculated after his examination of the premises
"a fair charge for the work which . . . [he] observed to

have been done." The question was excluded. The Robies saved an exception and offered to prove that the question would have been answered in the affirmative. A further question, whether the witness had formed an opinion, was also excluded, but no exception was saved to this exclusion. Counsel for the Robies then asked the judge to "state . . . for the record" the ground of exclusion, to which the judge replied, "The court is not here to be interrogated at all." An exception was saved to the refusal of the judge to make the requested statement.

There was no affirmative evidence that the premises were in the same condition in 1955 as when the work was completed. Indeed, as the judge pointed out, the premises at least had been subject to the wear and tear of family living for several years after the alterations. On this ground alone, the judge acted within the limits of his discretion in excluding opinion testimony by Olive based on what he saw. *Underhill* v. *Shactman*, 337 Mass. 730, 735. Cf. *Ford* v. *Worcester*, 335 Mass. 723, 724. Also, some of the work done, e.g. electrical and telephone work, lathing, shifts from direct current to alternating current, and removal of a partition, was of a character the nature and extent of which would not be apparent from inspection. The trial judge cannot be said to have abused his discretion in refusing to permit Olive to give an expert opinion not directly based upon either (a) adequate direct personal knowledge (cf. *Commonwealth* v. *Vaughn*, 329 Mass. 333, 335) of all the facts, which, the judge would have been warranted in finding here, Olive did not have from his own observation, or (b) assumed facts stated to him adequately and accurately in a proper hypothetical question, which was not asked in this case. See *Beaman* v. *Gerrish*, 235 Mass. 79, 87–88; *State Tax Commn.* v. *Assessors of Springfield*, 331 Mass. 677, 684–685; *Campbell* v. *Shea*, 332 Mass. 422, 425; Wigmore, Evidence (3d ed.) §§ 672–686; McCormick, Evidence, §§ 13–17. See also *Murphy* v. *Chichetto*, 323 Mass. 11, 15; *Rubin* v. *Arlington*, 327 Mass. 382, 383–385. Cf. *Muzi* v.

*Commonwealth*, 335 Mass. 101, 105–106; *Commonwealth* v. *Banuchi*, 335 Mass. 649, 654–656.

The trial judge was not required to state the grounds of his exclusion of Olive's testimony. It was the duty of counsel to bring to the judge's attention with sufficient clarity the grounds upon which the admission of the evidence was sought, so that, upon its exclusion, the points of law actually presented for the judge's consideration would be apparent and provide a basis for correction of the ruling if there was error. See *Rothwell* v. *First Natl. Bank*, 286 Mass. 417, 422. See also *Anderson* v. *Beacon Oil Co.* 281 Mass. 108, 110–111; *Nealon, petitioner*, 334 Mass. 213, 218. In any event, during the examination of Olive, the trial judge here had stated to counsel his views about the inquiry then in progress.

2. The Robies asked the trial judge to rule that there was "no sufficient evidence that the defendants . . . authorized the architect . . . Wills, or his associate . . . Minot, to bind them . . . to the payment of any . . . money claimed by the plaintiff . . . and the jury must disregard the notations appearing upon the several bills purporting to approve such bills for payment." The Robies, following the charge, excepted to the judge's failure to instruct as requested. In his charge the judge referred to the evidence with respect to the architects' activities in making the plans, supervising the work, and conferring with the Robies, and left it to the jury to determine the "relationship . . . between the architect" and the Robies, telling the jury in substance that the Robies were bound by the architect's actions within the scope of his authority if "the defendants looked on him . . . as an agent."

In view of the evidence, already summarized, that the supervision of the job was in fact left by Robie to Mrs. Robie and to Wills and Minot as architects; that Mrs. Robie dealt with Hawkins through Minot; that successive bills (admitted without objection and, therefore, in evidence for all purposes, see *Pataskas* v. *Judeikis*, 327 Mass. 258, 260) bearing the approval of one of the architects were paid by Robie promptly; and that Wills and Minot were in frequent

touch with the job and supervised it, the jury could not properly have been instructed to disregard the architects' notations of approval on the bills.   Under the oral contract here involved, we do not have specific provisions about the duties of the architect such as were found in cases like *Hathaway* v. *Stone*, 215 Mass. 212, 214–216.   Nevertheless, there was a basis in the evidence, and in the inferences reasonably to be drawn from the conduct of the parties, from which the jury would be warranted in finding that the architects were held out as the owner's representatives and agents in dealing with the Hawkins Company on this cost plus work.   If the jury found this to be the case, and that the architects in approving bills were acting within the scope of the duties actually or apparently confided to them, the jury were not required to disregard the architects' approval of the bills which constituted the architects' decision on a matter which the owners could be found to have left to their architects' supervision.   See *Morgan* v. *Burlington*, 316 Mass. 413, 417, but cf. pp. 419–421.   Cf. also *Benjamin Foster Co.* v. *Commonwealth*, 318 Mass. 190, 203–209; *Louis M. Herman Co. Inc.* v. *Gallagher Elec. Co. Inc.* 334 Mass. 652, 656.

*Exceptions overruled.*