PAUL YOVINO *vs*. ROBERT FISH & another.[1]

No. 88-P-132.

Suffolk.  February 15, 1989. — June 7, 1989.

Present: ARMSTRONG, BROWN, & KASS, JJ.

*Contract*, Employment. *Public Policy. Unlawful Interference. Libel and Slander. Privacy.*

In a civil action alleging wrongful discharge from employment, the defendants' motion for summary judgment was correctly allowed where the plaintiff offered no facts to support his allegation that he was discharged due to political interference by or on behalf of an elected official. [444]

No considerations of public policy were applicable to a radio station owner's alleged wrongful discharge of a radio program producer who was an at-will employee. [444-445]

In a civil action alleging wrongful discharge from employment, the defendants' motion for summary judgment was correctly allowed where no breach of an implied covenant of fair dealing was demonstrated by the plaintiff. [445]

The plaintiff in a civil action failed to adduce any evidence that the defendants wrongfully interfered with any business relationship or contractual arrangement of the plaintiff, with the result that the defendants' motion for summary judgment on that claim was correctly allowed. [445-446]

The statements of a plaintiff's former employer, alleged to be libelous, were held to be, on the uncontroverted facts presented on the defendants' motion for summary judgment, nonactionable statements of opinion. [446-450]

In a civil action in which the plaintiff asserted that his former employer, by abruptly dismissing him, cast him in a false light in the public eye causing a damaging invasion of privacy, the defendants' motion for summary judgment was correctly allowed where the plaintiff did not demonstrate that the defendants took steps to publicize his discharge, and where, in any event, the cause of action was foreclosed by the failure of the plaintiff to prevail on a libel claim arising from the same circumstances. [450]

[1] RKO General, Inc.

CIVIL ACTION commenced in the Superior Court Department on August 9, 1982.

The case was heard by *Barbara J. Rouse*, J., on a motion for summary judgment.

*Terrence J. McLarney* for the plaintiff.

*Geoffrey E. Hobart* (*Michael J. Liston* with him) for the defendants.

KASS, J. It was not exactly "The War of the Worlds,"[2] but some listeners were taken in. On July 16, 1982, a "talkmaster," Jerry Williams, broadcasting over radio station WRKO-AM, interviewed a comic who impersonated then mayor of Boston, Kevin H. White. "His Honor," the honorific which Williams lavished upon his guest, took calls from the radio audience. He pretended to be the mayor, although greatly exaggerating the mannerisms of the persona of the real mayor. Broad as the caricature may have been, the impersonator induced a flurry of phone calls to City Hall in which the callers made unflattering observations about what the "mayor" was saying on the air. While the show was still in progress, the true mayor's press secretary was moved to lodge a protest by telephone with the management of the radio station. Williams did not identify his guest as an impersonator until well into the program, an alarmed station management having ordered that be done.

Insisting that Yovino had failed, in contravention of his known duty as producer, to clear the "His Honor" act with him or the director of programming, the defendant Fish, who was the general manager of WRKO, sacked Yovino that afternoon. Yovino, who had been employed on an "at will" basis as the producer of the Jerry Williams Show, claims he was thrown to the wolves by the station to assuage political wrath. The defendants say that the impersonator episode was the last in a series of misjudgments by Yovino and that is why he was

---

[2] On October 30, 1938 (for Halloween), the Mercury Theater, under the direction of Orson Welles, broadcast a radio play adaptation of the H.G. Wells novel. Actors playing radio news announcers described an invasion from Mars in New Jersey. The dramatization was sufficiently realistic to induce a nationwide panic. Dunning, Tune in Yesterday, The Ultimate Encyclopedia of Old-Time Radio 1925-1976 at 407-413 (1976).

fired, although they add that they were free to discharge Yovino for any reason or no reason.

Yovino's complaint alleges: (1) breach of an implied covenant of fair dealing; (2) unfair discharge violative of public policy; (3) "false light" invasion of privacy; (4) interference with advantageous business relations; and (5) libel. A judge of the Superior Court disposed of all counts on summary judgment, and Yovino has appealed. The defendants carry the burden of establishing that, as to any of the counts, there is no genuine issue of material fact and that, on the uncontroverted facts, the defendants are entitled to judgment as matter of law. *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 626 (1989). *Williams* v. *Bresnahan, ante* 191, 193 (1989).

1. *The plaintiff as sacrificial lamb; implied covenant of fair dealing and public policy.* His discharge, Yovino contends, was an act of appeasement to an angry mayor's office. Public policy, he reasons, should protect workers in the media from political interference, and, consequently, the termination of his employment was unlawful under the public policy limitation to the discharge of at-will employees. See *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 149-151 (1989); *Glaz* v. *Ralston Purina Co.*, 24 Mass. App. Ct. 386, 388-390 (1987), which collects many of the authorities. None of the materials offered by either party on the motion for summary judgment contains an express or implied request by a political figure for Yovino's head. The plaintiff's factual premise, therefore, has no foundation, but even if it did, Yovino's broad interpretation of the public policy exception is not in harmony with recent decisions.

Employees have redress if they lose their jobs "for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch., supra* at 149-150. See also *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. 413, 416 (1988); Note, Protecting Employees At Will Against Wrongful Discharge: The Public Policy Exception, 96 Harv.L.Rev. 1931,

1936-1937 (1983). The exception does not extend to the performance of all appropriate and socially desirable duty. *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, *supra* at 150. Although the grain of sand may produce the pearl, an employer may opt to relieve itself of the irritant. Perhaps the most one may ask for a hoax is toleration, rather than its elevation to activity protected by public policy. See *Glaz* v. *Ralston Purina Co.*, 24 Mass. App. Ct. at 390. Freedom of speech is not implicated as the radio station owner, in relation to its employees, has the last word about what it chooses to broadcast.

In firing Yovino, RKO forced no forfeiture of economic benefits earned or almost earned. See *McCone* v. *New England Tel. & Tel. Co.*, 393 Mass. 231, 234 (1984); *Tenedios* v. *Wm. Filene's Sons Co.*, 20 Mass. App. Ct. 252, 255 (1985); *Cataldo* v. *Zuckerman*, 20 Mass. App. Ct. 731, 739 (1985). Compare *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 102-104 (1977). There was no breach of the implied covenant of fair dealing as that covenant has been understood in the cases.

2. *Wrongful interference with business relations.* Missing from the materials on summary judgment is any evidence (1) of a business relationship that Yovino had established or a beneficial contractual arrangement which he was about to enter; (2) that the defendants knew about any such relationship or arrangement; (3) that the defendant had intentionally and maliciously interfered with any such arrangement or relationship; and (4) that Yovino had suffered a loss of advantage because of the defendant's conduct. *Comey* v. *Hill*, 387 Mass. 11, 19 (1982). *Chemawa Country Golf, Inc.* v. *Wnuk*, 9 Mass. App. Ct. 506, 509 (1980). *Yiakas* v. *Savoy*, 26 Mass. App. Ct. 310, 315 (1988).

Yovino's affidavit that an acquaintance heard the defendant Fish say at an industry gathering "if I have anything to do with it, Yovino will never work in broadcasting again" is totem pole hearsay and is not competent to defeat summary judgment. In the absence of a motion to strike the defective part of the affidavit, the motion judge had discretion to credit it or disregard it. We may assume the latter. *Madsen* v. *Erwin*, 395

Mass. 715, 719-721 (1985). *Glaz* v. *Ralston Purina Co.*, 24
Mass. App. Ct. at 387. The defendants' answers to media
inquiries show neither knowledge of Yovino's job opportunities
nor intent to undermine them. See *Mailhiot* v. *Liberty Bank
& Trust Co.*, 24 Mass. App. Ct. 525, 527 n.3 (1987).

3. *Libel.* In a display of narcissistic interest in stories about
the media, the press gave the Yovino firing expansive cover-
age.[3] Fish was not reticent about responding. Certain of the
damaging remarks which Fish made about Yovino and which
appeared in print qualified as opinion, as Yovino concedes:
"[Yovino] . . . had a penchant for carrying on without consult-
ing anyone"; "[t]hat bleepin' kid was going to cost me my
license some day"; and "[i]t was an unusual topic for a show,
and it was the responsibility of the program producer to check
it out, in advance, with one of us."

Opinion is not actionable because, under the First Amend-
ment to the United States Constitution, there is no such thing
as a false idea. *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323,
339-340 (1974). *Myers* v. *Boston Magazine Co.*, 380 Mass.
336, 338-339 (1980). *Cole* v. *Westinghouse Bdcst. Co.*, 386
Mass. 303, 308 (1982). See Restatement (Second) of Torts
§ 566 (1977), which, however, states the reservation, adopted
in the cases, that an opinion may be actionable "if it implies
the allegation of undisclosed defamatory facts as the basis for
the opinion." See also *National Assn. of Govt. Employees,
Inc.* v. *Central Bdcst. Corp.*, 379 Mass. 220, 227-228 (1979),
cert. denied, 446 U.S. 935 (1980). The *Cole* case shares the
flavor of the case now before us. There had been a newsworthy
firing in broadcasting. In response to inquiries by print report-
ers, the station gave out statements that the person had been
discharged "for reasons of misconduct and insubordination,"
that it was "a case of 'sloppy and irresponsible' reporting," and
that the employee had been "fired for a history of bad reporting

---

[3] Until the spate of newspaper stories about his discharge, Yovino had
not been a public figure within the meaning of *New York Times Co.* v.
*Sullivan*, 376 U.S. 254, 279-280 (1964). The defendants do not contest
that Yovino's claim is to be considered on a private person standard.

techniques." *Cole* v. *Westinghouse Bdcst. Co.*, 386 Mass. at 305-306. The remarks were held to be nonactionable statements of opinion.

Those disparaging statements which the plaintiff in the instant case says had the ring of fact bore on the issue of whether Yovino had cleared the Kevin White impersonation with his program director before it went on the air: "the program idea should have been cleared with him or the program director," "the Friday show, which had the mimic taking calls on the air, had neither been submitted for approval, nor OK'd, either by him or WRKO program manager, Mel Miller," "[w]hen I found out from Mel Miller that the program had not been cleared, in my mind he [Yovino] was already gone."[4] Yovino says that the impersonator program idea had been made known to Fish and the program director, that neither had disapproved it, and that the statements by Fish that he had not obtained clearance were false and damaging to his reputation in broadcasting.

Our inquiry is whether, in context, the "failure to clear" remarks unambiguously constituted fact or opinion or whether those remarks were susceptible of being read by a reasonable person as fact or opinion, in which event the final determination was for a jury (or other trier of fact). *Aldoupolis* v. *Globe Newspaper Co.*, 398 Mass. 731, 733-734 (1986). What is "unambiguously" fact or opinion is one of those questions which, paradoxically, is not self-evident and requires tools of analysis.[5] Among the factors are: (1) how is the allegedly

---

[4] The record appendix contains a photocopy of a later Boston Globe newspaper article, dated August 23, 1982, which quotes Fish as saying "the show was not cleared by program executives, in violation of station policy." It is doubtful that this clipping came before the judge. Yovino did not refer to it in his answers to interrogatories in which he details how he claims to have been libelled, nor does the Superior Court judge, who prepared a thoughtful and careful memorandum of decision, mention the August 23, 1982, article in her detailed compilation of the press excerpts which Yovino, in opposing summary judgment, contended were libellous. We have examined the original papers and the August 23 article is not among them.

[5] In *Ollman* v. *Evans*, 750 F.2d 970 (D.C. Cir. 1984) (en banc), cert. denied, 471 U.S. 1127 (1985), the court lavished an opinion, two concurring

offensive statement commonly understood; (2) is the statement capable of being characterized as true or false; (3) what will the reader infer from the statement objected to in light of statements not objected to, i.e., how does the statement sit in the context of the material in which the statement appeared; and (4) what is the broader context or setting in which the statement appears? *Ollman* v. *Evans*, 750 F.2d 970, 979-984 (D.C. Cir. 1984) (en banc), cert. denied, 471 U.S. 1217 (1985). See *Aldoupolis* v. *Globe Newspaper Co.*, 398 Mass. at 733-734. We consider these factors, although in somewhat different order.

Whether Yovino had cleared the White impersonation with the program director is a statement susceptible of being characterized as true or false. One may pause to ask if such a statement is defamatory. Taken in isolation, the statements upon which Yovino focuses do not, in common understanding, tend to demean him in the eyes of the relevant — radio broadcasting — community. They say only that the impersonator program had not been cleared with higher executives at the radio station. The surface import of the statements is that higher management fobs off responsibility for the program and expresses displeasure about not having been consulted. There is no assertion that Yovino violated a particular rule or order of the station about what programs were to be cleared in advance and how they were to be cleared.

In the context of the material in which the "failure to clear" statements appeared, however, they took on a darker meaning. The reader is given unmistakably to understand that Yovino was freewheeling and inattentive to the chain of command, that this had displeased management before, that the details of the impersonator show should have been checked out, and that this was a last straw. As we have seen, however, the contextual statements, e.g., "that bleepin' kid was going to cost me my license some day" and "the producer had a penchant for carrying on without consulting anyone," are of a derogatory

opinions, a statement concurring in part and dissenting in part, and three opinons dissenting in part, covering an aggregate sixty-nine pages, on whether an article expressed opinion or made statements of fact.

evaluation sort which, under the *Cole* case, pass as nonactionable opinion when spoken in explanation of a discharge which has attracted the attention of the press. Here, the many statements by Fish in response to press questions which fell into the category of permissible derogatory evaluation of Yovino so thoroughly enveloped the "failure to clear" statements that we doubt they may be sifted from the over-all text to support a libel action. The sting to Yovino within the broadcasting community was his employer's generalized — and here permissible — description of him as a loose cannon.

More decisive than the layers of opinion which enveloped the statements claimed to be defamatory is the point that the meaning of "failure to clear" pertained to not notifying higher management about, and getting its consent to, putting "His Honor" on the air without introductory and then periodic explanation that he was a comedian doing an impersonation routine. An impersonator on the air would be funny; allowing him to palm himself off as the real article to the more credulous members of the radio audience would be funny but not without, as events proved, a touch of difficulty for the station. The materials offered by Yovino in opposition to the motion for summary judgment, read indulgently in his favor (see *Godbout v. Cousens*, 396 Mass. 254, 258 [1985]), do not assert that Yovino had ever notified Miller, the program director, or Fish, the general manager, that the impersonator would be broadcast without introduction as an actor. Yovino's insistence, by affidavit and deposition, that the intention of Williams to have the impersonator on his program on July 16, 1982, had been mentioned in the presence of Miller and Fish, does not contravene the position that Yovino did not clear the volatile format, i.e., putting the impersonator on without identifying him as such. The best the plaintiff does on this score is to say that neither Miller nor Fish had inquired whether there would be a disclaimer.

It is worth adding that, even had the "failure to clear" statements risen to defamatory meaning, Yovino's materials on summary judgment do not controvert Fish's affidavit that, acting on information received from his program director, he

understood the program had not been cleared in any form. With respect to a private person, Fish was bound not to be negligent in making a defamatory statement. *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 858 (1975). *Jones* v. *Taibbi*, 400 Mass. 786, 797 (1987). In the circumstances, and pressed to respond to reporters, Fish could reasonably rely on information from his second in command. Yovino offered some evidence of foreknowledge by Fish of the impersonator program, namely that Jerry Williams told Fish about intending to air the impersonator the next day. Hearsay difficulties aside, that did not discharge Yovino's responsibility to submit problematic or controversial programs in a manner which would subject them to the exercise of critical judgment by the program director. See *Simpson* v. *Marlborough*, 236 Mass. 210, 214 (1920); *Louis M. Herman Co.* v. *Gallagher Elec. Co.*, 334 Mass. 652, 656 (1956).

In view of our conclusion that, on the uncontroverted facts, the defendants did not defame the plaintiff, we do not consider whether the offending remarks, if defamatory, enjoyed a conditional privilege which the defendants did not abuse. See *Bratt* v. *International Business Mach. Corp.*, 392 Mass. 508, 512-516 (1984). The motion judge relied on the conditional privilege point.

4. *False light.* Yovino claims the publicity surrounding his abrupt dismissal cast him in a false light in the public eye, causing a damaging invasion of privacy. The tort, articulated in Restatement (Second) of Torts § 652E (1977), imposes liability for invasion of privacy on "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light . . . ." To date Massachusetts has not adopted the false light invasion of privacy tort. *Fox Tree* v. *Harte-Hanks Communications, Inc.*, 398 Mass. 845, 848-849 (1986). *Jones* v. *Taibbi*, 400 Mass. at 801 n.12. We need not consider it here as the defendants took no steps to give Yovino's discharge publicity. Fish's statements were responsive to unsolicited press inquiry. Moreover, a false light claim, if recognized, would be foreclosed by failure of the libel claim. See *Hustler Magazine* v. *Falwell*, 485 U.S. 46 (1988).

*Judgment affirmed.*