Fecteau, J.
The plaintiffs, Joseph C. Lefebvre (“Lefebrve”) and his wife Bonnie B. Lefebvre (“Mrs. Lefebvre”), filed a ten-count complaint on December 21, 2000. The complaint names multiple defendants: UMass Memorial Health Care, Inc. (“UMMHC”), the University of Massachusetts (“UMass”) and the individual trustees of the University (“the Trustees”) (together “the University defendants”), Thomas [Reilly], as Attorney General of the Commonwealth, and Robert B. McGrath (“McGrath”). Counts I through IX assert claims by Lefebvre, including invasion of privacy (Count I), defamation (Count II), false light (Count III), negligence (Count IV), respondeat superior (Count V), intentional infliction of emotional distress (Count VT), negligent infliction of emotional distress (Count VII), breach of agreement (Count VIII), and breach of the implied covenant of good faith and fair dealing (Count IX). Count X is a claim for loss of consortium by Mrs. Lefebvre. While the complaint does not discriminate among the defendants as to the plaintiffs theory of liability as against each, with all defendants being named in every count, we look to the summary judgment record, including the plaintiffs’ opposition for further description of such theories.
The University defendants and UMMHC now move for summary judgment on all counts. The parties were heard in connection with this motion on February 11, 2004. For the following reasons, the motion is allowed on all counts as to the University defendants. As regards allegations against UMMHC, the motion shall be allowed as to counts III, VI, VII, VIII and IX, and denied as to counts I, II, IV, V and X.

BACKGROUND

The following facts are taken from the summary judgment record. The undisputed facts are stated, taking all reasonable inferences in favor of the plaintiffs, and distinguishing the disputed issues of material fact.
In 1998, the plaintiff Joseph Lefebvre was a paramedic at UMMHC’s University Campus. An incident at work exposed him to a patient’s blood (“the exposure”). Because of this exposure, Lefebvre was placed on a prophylactic course of medications, to protect against exposure to infectious disease. Following HIV and hepatitis testing, which were negative, Lefebvre voluntarily stopped the medication. He missed approximately two and a half weeks of work while he was taking the medications.
Among others, Lefebvre discussed the exposure with a paramedic supervisor, defendant Robert Mc-Grath (“McGrath”). Apparently sensing his support, Lefebvre states that he shared with McGrath his fear that he could have infected his wife and unborn child with HIV. The plaintiffs contend that this communication was confidential, pursuant to UMMHC patient and employee confidentiality policies which are described as prohibiting discussion of private employee information with non-supervisoiy personnel; however, the motion record is not favored with a copy or description of those policies.
On or about December 30, 1998, two paramedics based at UMass Memorial’s University Campus in Worcester, Terry Jernberg (“Jernberg”) and McGrath, were on duty in their ambulance. They had a conversation which was, unbeknownst to both, broadcast locally (“the broadcast conversation”), on a frequency designated for emergency response departments and ambulance companies, but which can be heard locally on scanners; this broadcast occurred when McGrath accidentally activated his radio by leaning against the transmission button worn on his belt. McGrath and Jernberg were not aware that the radio was activated and the conversation was broadcast.
During the broadcast conversation, McGrath told Jernberg that he thought he had smelled an odor of alcohol at a remote ambulance office where two other paramedics were present, Lefebvre and David Wiggins (“Wiggins”). The parties agree that the broadcast conversation included references to alcohol, marijuana use, a piece of medical equipment called a pulse oximeter, and to generational differences among paramedics. It also included references to the exposure incident involving Lefebvre, of which both Mc-Grath and Jernberg were aware. This discussion included some reference to a “needle-stick” and the *677 use of the term “fairy” in connection with Lefebvre. The plaintiffs assert that McGrath and Jernberg were implicitly, by the use of these terms, referencing HIV and hepatitis “or other diseases transmitted by homosexual contact” even though no specific disease was mentioned. The precise content of the conversation is largely disputed, including to whom each of the statements that were made by McGrath and Jernberg should be attributed and whether they were in reference to Lefebvre or Wiggins.
Lefebvre did not hear the broadcast conversation, although he can identify several people who did hear it, including a UMMHC dispatcher, Rory Duquette, a local reporter from the area who called to complain and whose complaint was memorialized in an email and three other paramedics who advised McGrath and Jernberg of the “open-mike” after the broadcast discussion. Lefebvre learned of the broadcast conversation from a fellow paramedic, Keith Dybas, and another paramedic, James Midgely, who approached him about it. Lefebvre requested to hear the tape of the broadcast conversation, but was not permitted to do so.
There had been no prior incidents specifically of accidental broadcasts — or “open-mike” transmissions — by Jernberg or McGrath. However, aletterfrom Carol Eliadi, Vice Chair, Divisional Chair of Perioperative, Emergency and Critical Care Nursing, UMass Medical Center, dated October 18, 1993, had earlier been placed in McGrath’s personnel file. The letter criticizes his conduct as a supervisor, including among other things, his “fuelling] the rumor mill” and “unprofessional” disclosure of names of employees he believed had complained about the department. The letter also mentions McGrath’s reputation with the staff, his peers and his Director “for being an agitator, misrepresenting issues as staff concerns when they are actually your own, being a ‘pot stirrer,’ playing management against staff, etc. Be certain that this behavior is not acceptable and will not be tolerated.”
UMMHC conducted an investigation of the broadcast conversation. McGrath stated, according to notes of an interview on December 31,1998, that “he felt the [sic] UMass expected him to have a sense of what was going on out in the field, and he was getting information from Jernberg.” The Lefebvres contend that the investigation was not thorough, and that it was designed to cover for McGrath. Several people were interviewed, including McGrath, Jernberg, and Wiggins. Lefebvre was not interviewed, and he was not advised of the outcome of the investigation. UMMHC asserts that McGrath was terminated on January 5, 1999. However, a later agreement permitted him to take early retirement in lieu of termination.
Lefebvre was not formally disciplined following the broadcast conversation, nor was he transferred, reassigned or terminated. However, he contends that he was not permitted to hear the tape or read a transcript because UMMHC knew that he was contemplating legal action. Further, he contends that following the conversation he was “shut out.” UMMHC did not offer a statement, discussion, training, educational initiative, or any other action following the broadcast conversation, nor did UMMHC revise its policies and procedures.[3] In March 1999, on the same date, both Jernberg and Wiggins received promotions although apparently neither had applied for the new jobs; they accepted them when UMMHC offered. Normal UMMHC procedure was to post job openings and require paramedics to apply and interview for them.
Lefebvre complains that he was exposed to embarrassment and ridicule include being called “wussy,” “wimpy” or “wimpy Joe,” and a “fairy” by different individuals following the broadcast. No one suggested to him that he had HIV or hepatitis C. He also complains that his employers ignored his request to obtain a transcript of the broadcast, failed to include him in the investigation of the broadcast, never informed him of the outcome of the investigation and never provided a reason to him for McGrath’s termination. Because he was not involved in the investigation of the broadcast, Lefebvre states that he “no longer felt part of the team and thought his competence was being questioned.”
Although Lefebvre agrees that “everybody gets a ribbing ... in the [paramedic] profession,” he states that the comments and ridicule directed at him following the broadcast conversation were excessive, ill-natured, chronic and cruel. The parties dispute what efforts Lefebvre made to bring this treatment to the attention of UMMHC management.
Lefebvre states that as a result of the ridicule he received following the broadcast conversation, and UMMHC’s failure to include him in the investigation of the incident, he began to question his competency as a paramedic and worry over his professional reputation or how others viewed his competency. Additionally, after the broadcast conversation, he began to experience flashbacks to traumatic 911 calls. The flashbacks occurred two to four times a week, both when he was awake and asleep.
Lefebvre resigned his full-time position on July 7, 1999, and requested that he be kept on as a per diem, part-time paramedic. He alleges that UMMHC’s actions and inactions amounts to constructive termination of his employment. Although he is presently employed as a paramedic and firefighter with the Westborough Fire Department, he contends that being forced from his position at UMMHC caused damage to his professional reputation and mental anguish.

DISCUSSION

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Com *678 missioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 360 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles him to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
I. The University Defendants
Lefebvre alleges several counts which are intentional torts. The Massachusetts Tort Claims Act, G.L.c. 258 et seq. (“MTCA”), allows suits against the Commonwealth for negligent or wrongful conduct, G.L.c. 258, §2, but not for claims arising from intentional torts. G.L.c. 258, §10(c). The statute specifies a list of intentional torts,[4] but is properly read to exclude all intentional torts. See Molinaro v. Town of Northbridge, 419 Mass. 278, 279 (1995); Connerty v. Metropolitan District Comm’n, 398 Mass. 140, 149 n.8 (1986) (“The use of the word ‘including’ in §10(c) indicates that the enumeration of intentional torts in the section is not an all-inclusive list”).
The MTCA extends to the University of Massachusetts. See Hannigan v. New Gamma-Delta Chapter of Kappa Sigma Fraternity, Inc., 367 Mass. 658, 659 (1975). Thus, the counts which allege intentional torts fail as matter of law. Summary judgment should be allowed for the University on Count I (invasion of privacy), Count II (defamation) and Count VT (intentional infliction of emotional distress).[5] The plaintiffs do not dispute that their remaining claims against the University are derivative of these counts, arid that therefore the University is entitled to summary judgment on the remaining counts as well.
The complaint does not contain any allegations of direct action by any of the Trustees. Presumably, in the best light, they have been included as defendants for the sake of thorough pleading and apparently out of an abundance of caution, citing the legislation that authorized the Trustees to create anon-profit corporation for provision of medical services in central Massachusetts, UMass Memorial Health Care. 1997 Mass. Acts 163. Given a requirement that the trustees receive notice of suit, the plaintiffs contend that they are, therefore, statutorily required parties to this action, and that it is procedurally improper for summary judgment to enter against them. The parties have not provided the court with authority to support this position, especially given the corporate status of UMMHC.[6] However, even if the plaintiffs are correct that the Trustees were required parties at initial pleading, they may still be entitled to judgment as a matter of law at the summary judgment stage. To the extent that the plaintiffs’ allegations mirror those against the University, above, summary judgment should be allowed under the same reasoning. To the extent that the plaintiffs attempt to present a different theory, the claims will necessarily fail because the complaint and motion record do not contain any allegations and/or evidence of record of specific acts by the Trustees, or reasons for invoking another theory of direct liability.
II. University of Massachusetts Memorial Health Care, Inc.
A. Vicarious Liability
An employer is vicariously liable for the tortious conduct of an employee if (1) at the time of the conduct there was an employer-employee relationship between them, and (2) the conduct occurred within the scope of that employment.[7] Dias v. Brigham Medical Associates, Inc., 438 Mass. 317, 322 (2002) (vicarious liability for negligent actions); Worcester Ins. Co. v. Fells Acres Day School, Inc., 408 Mass. 393, 404 (1990) (vicarious liability for intentional torts). “[C]onduct of an agent is within the scope of employment if it is of the kind he is employed to perform . . .; if it occurs substantially within the authorized time and space limits . . .; and if it is motivated, at least in part, by a purpose to serve the employer . . .” Id., quoting Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 859 (1986).
Here, McGrath was on duty, sitting in an ambulance when the broadcast conversation occurred. He was speaking with a subordinate, attempting to get “a sense of what was going on out in the field.” He believed that this was expected of him by UMMHC. A jury could reasonably find that McGrath was acting within the scope of his employment when the broadcast conversation took place.
1. Intentional Torts
Counts I and II allege invasion of privacy and defamation, respectively. The defendants contend that they are entitled to judgment as a matter of law because McGrath was not acting within the scope of his employment, because the “open-mike” transmission was accidental, and because the statements made by McGrath are not actionable. None of these positions is persuasive.
In addition to showing that McGrath was acting within the scope of his employment, the plaintiffs will have to show that his actions were tortious. There are disputed material facts as to the content of the broadcast conversation. Thus, summary judgment is inappropriate on both invasion of privacy[8] and defamation.[9]
The defendants also contend that they are entitled to judgment as a matter of law because the undisputed facts would not support a jury’s conclusion that the broadcast was intentional. This is true — Lefebvre ad *679 mits that McGrath broadcast the conversation by accident. However, the plaintiffs need not show that the broadcast was intentional, only that the publication was intentional. “Publication” means merely that the defamatory statement is heard by a third person, who understands the statement. Joseph R. Nolan & Laurie J. Sartorio, Tort Law §129, at p.194. McGrath’s statements to Jernberg alone are sufficient for a jury to conclude that they were published.
Therefore, summary judgment must be denied as to UMMHC on Counts I and II.
2.Negligence
The plaintiffs make claims for negligence in Count IV of the complaint. Ordinarily, summary judgment is disfavored to decide a claim of negligence, because it usually presents a question of fact. Roderick v. Brandy Hill Co., 36 Mass.App.Ct. 948, 949 (1994). However, the court “may decide the issue as matter of law when no rational view of the evidence permits a finding of negligence.” Id. “A court should not grant a party’s motion for summary judgment ‘merely because the facts he offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial.’ ” Attorney Gen. v. Bailey, 386 Mass. 367, 370 (1982) (citation omitted).
As to UMMHC, the plaintiffs allege both direct and vicarious liability. The direct liability is alleged from the negligent supervision of McGrath. “(A]n employer whose employees are brought in contact with members of the public in the course of the employer’s business has a duty to exercise reasonable care in the selection and retention of his employees.” Foster v. Loft, Inc., 26 Mass.App.Ct. 289, 290 (1988). In Coughlin v. Titus & Bean Graphics, Inc., 54 Mass.App.Ct. 633 (2002), the Appeals Court implied that this duty is owed to other employees as well as members of the public. Id. at 639 (no duty owed to victim of employee where she “was neither a customer . . . nor an employee or business invitee at the time she was murdered”).
The defendants argue that there are no facts based upon which UMMHC knew or should have known that McGrath was a risk to violate confidentiality policies, expose personal information of subordinates, or misuse the dedicated radio band. The plaintiffs point to the 1993 letter place in McGrath’s file, which notes his “fueling the rumor mill,” and unprofessional behavior with regard to employees’ complaints. There is, therefore, a genuine dispute of material fact as to whether UMMHC had sufficient notice about McGrath, foreclosing summary judgment on the direct liability theory.
To the extent that the plaintiffs allege that UMMHC is vicariously liable for the negligence of McGrath,[10] the disputed material facts as to the content of the broadcast conversation prevent summary judgment. Therefore, motion for summary judgment on Count IV is denied as to UMMHC.
3.False Light
Count III of the complaint alleges that the defendants wrongfully portrayed him in a false light. This claim fails as a matter of law. Although well recognized in other jurisdictions and by the Restatement of Torts, false light is not recognized as a cause of action in Massachusetts. See ELM Medical Laboratory, Inc. v. RKO General, Inc., 403 Mass. 779, 787 (1989); Yovino v. Fish, 27 Mass.App.Ct. 442, 450 (1989). The plaintiffs contend that the Supreme Judicial Court has never explicitly rejected the tort of false light, instead deferring the question, and thus the claim should proceed. However, the Court has repeatedly and explicitly declined to adopt the cause of action. See, e.g. Elm Medical Laboratory, 403 Mass, at 787 (“This court has not recognized that tort and does not choose to do so now”). Count III fails as a matter of law, and the allowance of the motion for summary judgment is, therefore, warranted.
4.Emotional Distress
Counts VI and VII of the complaint allege intentional and negligent infliction of emotional distress, respectively. These claims are barred by the exclusivity clause of the workman’s compensation statute, G.L.c. 152, §24. “Common law actions are barred by the exclusivity provision of the workers’ compensation act where; "the plaintiff is shown to be an employee; his condition is shown to be a ‘personal injury’ within the meaning of the (statute); and the injury is shown to have arisen ‘out of and in the course of... employment.’ “ Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996), quoting Foley v. Polaroid Corp., 381 Mass. 545, 548-49 (1980). This permits recovery for emotional injuries. Doe v. Purity Supreme, Inc., 422 Mass. 563, 565 (1996). "Except for certain exceptions . . . intentional torts are covered by the workers’ compensation act, even when they are committed by co-employees." Id. Claims are barred whether or not the co-employee was acting within the scope of his employment when he committed a tort. Brown v. Nutter, McClennen & Fish, 45 Mass.App.Ct. 212, 215 (1998).
The plaintiffs contend that the claims are not barred, because emotional distress damages are not barred by the workman’s compensation provision. However, the Supreme Judicial Court has distinguished emotional distress damages allowed on an underlying claim that is not barred, from a claim where mental harm is an “indispensable ingredient.” Green, 422 Mass, at 560-61. Thus, while the plaintiff would not be barred from recovering emotional damages for their other tort claims, the claims for both intentional and negligent infliction of emotional distress are barred by G.L.c. 152, §24. Id. at 561; see also Foley, 381 Mass, at 552. Lefebvre’s claims fail as a matter of law, and summary judgment is allowed on Counts VI and VII.
*680 5. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing
In Counts VIII and IX, respectively, the plaintiffs assert claims for breach of agreement and breach of implied covenant of good faith and fair dealing. They argue that the UMMHC confidentiality policy constituted a binding contract between Lefebvre and UMMHC. This claim fails. Although an employee manual may create an express or implied contract, Jackson v. Action for Boston Community Development, Inc., 403 Mass. 8, 13 (1988), here the record does not contain a copy of a policy nor a description of its language. More significantly, the plaintiff has not provided any evidence that it was a subject upon which the employment agreement was made. There is no evidence of any employment contract between Lefebvre and UMMHC.
To the extent that the plaintiffs attempt to import statutory patient protections found in G.L.c. 111, §70E, into the context of his employment relationship with the defendant, said statute provides a remedy: that a party whose rights under the statute are violated may bring suit pursuant to G.L.c. 231, §§60B-60E (a malpractice action). The protections do not become employment contract terms.
The plaintiffs’ claim for breach of implied covenant of good faith and fair dealing must fail as well. In the absence of an express employment contract, the principles developed in the law of employment-at-will precludes this claim in the absence of well-known but limited public policy exceptions. See Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451 (1991), Gram v. Liberty Mutual Ins. Co., 384 Mass. 659 (1981), and Fortune v. National Cash Register Co., 373 Mass. 96 (1977). “[A] claim of a violation of the covenant can only be evaluated in relationship to the contract of which it is a part.” Wilkinson v. QCC, Inc., 53 Mass.App.Ct. 1109 (2001) (unpublished).
6. Loss of Consortium
Count X is a claim for loss of consortium by Mrs. Lefebvre. To recover for spousal loss of consortium, a plaintiff must show that his or her spouse was injured by tortious conduct of the defendant, causing the plaintiff to suffer from loss of spouse’s companionship, affection and sexual enjoyment. See Diaz v. Eli Lilly & Co., 364 Mass. 153 (1973). As there are disputes of material fact preventing summary judgment on some counts by Lefebvre, summary judgment should be denied on Count X.
ORDER ON MOTION
For the foregoing reasons, the defendants’ motion for summary judgment is allowed on all counts as to the University of Massachusetts and the Trustees.
As regards the plaintiffs’ claims against UMMHC, the claims for false light, and negligent and intentional infliction of emotional distress fail as a matter of law; consequently, the defendant’s motion is allowed as to UMMHC on Counts III, VI and VII. The defendant’s motion for summary judgment as to the claims for breach of contract (Count VIII) and breach of implied covenant of good faith (Count IX) is allowed, as the plaintiffs have failed to satisfy their burden of production at this stage of the proceedings to support said claims.
As there are disputes of material fact that prevent summary judgment on Counts I (invasion of privacy), II (defamation), IV (negligence), V (respondeat superior) and X (loss of consortium), the defendant’s motion for summary judgment as to said counts is denied.

Following the broadcast conversation, the exposure was openly discussed in a classroom setting, for continuing education purposes.

The provisions of the MTCA allowing for actions against the Commonwealth do not apply to “any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations.” G.L.c. 258, §10(c).

Count VI should also be dismissed because it is barred by the workman’s compensation statute. See supra.

In fact, the act specifically provides that “the surviving or resulting corporation or corporations [UMMHC] shall have all of the rights, powers, and authorities of a corporation established pursuant to chapter 180 of the General Laws and shall not be deemed to be an agency, commission, authority or other subdivision of the commonwealth or instrumentality of any of the foregoing for any purpose.” 1997 Mass. Acts 163 §4(b).

The complaint does not specify the theories of liability. However, the claims are brought against all defendants. Additionally, Count V of the complaint alleges respondeat superior liability. The complaint does not specify the underlying tort, but construing the pleadings liberally, Mass.R.Civ.P. 8(a), the court must assume that the plaintiffs are making this claim as to all the allegations.

Section 1B of G.L.c. 214 establishes an individual’s “right against unreasonable, substantial or serious interference with his privacy.” As interpreted by the Supreme Judicial Court, the interference must be both unreasonable, and either substantial or serious. Schlesinger v. Merrill Lynch Pierce, Fenner & Smith Inc., 409 Mass. 514, 517-19 (1991).

Lefebvre must show that McGrath made a statement concerning Lefebvre to a third party, the statement could damage his reputation in the community, that McGrath was at least negligent as to the truth of the statement, and that the statement either caused economic loss or is actionable without proof of loss. See Ravnikar v. Bogojavelensky, 438 Mass. 627, 629-30 (2003).

See supra note 7.